**ESQUIRE, Inc. v. VARGA ENTERPRISES, Inc., et al.**

No. 47 C 1175.

United States District Court

N. D. Illinois, E. D.

Dec. 14, 1948.

See also 166 F.2d 651.

Chritton, Schroeder, Merriam & Hofgren, of Chicago, Ill., for plaintiff.

Musgrave, Ewins, Price & Notz, of Chicago, Ill., for defendant.

CAMPBELL, District Judge.

Plaintiff brought this action, seeking both legal and equitable relief, for alleged copyright and trade mark infringement. Defendants denied such infringement and, issue having been joined, a trial of the cause was had upon its merits. Since the rights and liabilities of all the defendants are derivative from Alberto Vargas, he alone will be referred to hereinafter as defendant. Prior to trial, consent decrees were entered

against Globe Poster Corporation, Elvin Inc., Varga Calendars, Inc., and William R. Johnston, all of whom had been named as defendants.

Plaintiff corporation has, since its inception in 1933, carried on the business of publishing and selling magazine periodicals, and, since 1940, calendars, both wall-type and desk-type. One of the principal features of these publications has been what is commonly known as a "girl" painting or drawing. This particular form of art portrays women in a state of semi-nudity and emphasizes, or rather over-emphasizes, many of the physical details peculiar to the female anatomy.

From 1933 to 1940, plaintiff corporation hired several artists for the purpose of producing these "girl" paintings, and engaged defendant under a three-year contract in June, 1940. Under this contract defendant made and delivered certain pictures, one of which was reproduced each month, beginning October 1, 1940, in the magazine Esquire. Defendant also made and delivered twelve pictures each year, commencing in the fall of 1940, for the calendars published and sold by plaintiff during the following year. Originally, the pictures furnished bore defendant's name or signature, "Vargas", and were reproduced and published with his name thereon. Later by agreement of the parties, the name "Vargas" was changed to "Varga". Thereafter, the pictures created by defendant and published by plaintiff were called "Varga Girls", and the name of the defendant appearing thereon was "A. Varga" with a small "Esq." inserted in the large lower loop of the letter "g" of the name. This was placed upon the drawings by the plaintiff. No name appeared on the drawings when defendant delivered them to plaintiff. The name was used only in connection with pictures created by the defendant and was thus used by plaintiff until March 1, 1946.

The 1940 contract expired on June 30, 1943, but defendant continued to furnish pictures to plaintiff without a contract, which were published in the same manner as when the contract was in full force and effect, until May 23, 1944, when the parties entered into a new contract for a period of ten years and six months, commencing January 1, 1944. In January of 1946, defendant notified plaintiff that he was no longer bound by the contract, and refused thereafter to submit pictures to plaintiff. Since that time the present defendant instituted two different suits against plaintiff involving the validity of the contract and the right to use of the names "Varga", "Varga Girl" and "Varga Esquire", both of which suits resulted in judgments for the present plaintiff.

In the case at bar plaintiff bases its right of action on the claim that, subsequent to defendant's repudiation of the contract, he caused to be published calendars bearing the legend "The Varga Girl", and that four of the paintings contained therein were copied from paintings previously submitted to plaintiff by defendant and registered by the latter pursuant to the Copyright laws under Reg. Nos. 409,742; 422,342; 689,144 and 703,925.

█ The first issue to be determined is whether this Court has jurisdiction over Alberto Vargas individually. In view of the testimony and briefs of the parties, I believe that question can be disposed of summarily. The evidence appears to be sufficiently clear that he has submitted to the jurisdiction of the Court, and that he is actually and adequately represented as to his individual interest by counsel.

On the issue of copyright infringement, it should be noted that plaintiff alleges that four paintings in particular were copied. Plaintiff claims that plaintiff's Exhibit 3A is a copy of 3B; that 8A is a copy of 28; that 10A is a copy of 27B; and that 14A is a copy of 14B. Any attempt to point out the distinguishing elements of the various paintings should be prefaced by the observation that the over one hundred paintings by defendant in evidence reveal that defendant's artistic talent is limited to the portrayal of the female figure in varying degrees of undress. His success in this line of endeavor can undoubtedly be attributed to the remarkable physical characteristics of his finished product, e. g., the exaggerated torso and the subtly curved but unduly long leg. It is apparent from the testimony that this is all he has ever drawn,

and seems to be all he ever will draw. It follows, therefore, that all his future drawings will bear some similarity to his previous work, whether or not his past creations are before him at the time he is painting. He has a certain type of art in his mind and, consequently, that is all he is able to express on the drawing board. It can be seen, therefore, that if the first painting submitted by him to the plaintiff could properly be considered a work of creative art, his subsequent paintings should probably be accorded a similar status.

In any event, however, it is possible to detect a sufficient number of elements of distinction between the original and the accused drawings to remove the latter from the category of copied work. Although it is certainly not decisive, it should be noted for the record that the articles of "clothing" (this term is used euphemistically, for said articles are about as concealing as the ordinary window pane) vary from picture to picture.

Proceeding, then, to the first pair of drawings, i. e. Exhibits 3A (Accused) and 3B (Original), the following items of distinction can be observed, (a) Hair—Accused's hair is long and gathered at the base of the neck; Original's is combed upward to the top of the head in the well-known "upsweep" coiffure; (b) Face—Original faces almost directly away from the observer; Accused's head is turned more to the right, thereby revealing a greater portion of the cheek, eyebrow and eyelash; (c) Left hand—Original's ring and little fingers are curled under the palm; Accused's hand is spread out in a virtually flat position; (d) Right leg—Original's is held out straight from the body; Accused's is bent approximately 45 degrees at the knee; (e) Left leg—Original's is invisible; Accused's left foot is visible; (f) Body position—Accused appears to be in a more upright position which accordingly raises the left shoulder considerably above the right, whereas Original's shoulders are in almost a perfectly horizontal plane.

The next pair of paintings to be considered is Exhibit 8A (Accused) and Exhibit 28 (Original): (a) Hair—Original's is blonde and is combed loosely down about the shoulders; Accused's is brunette, apparently uncombed and spread out beneath the head; (b) Head and face—Accused's head is cocked more to the left, and the two faces are completely different; (c) Right arm—Accused's hand and lower forearm are tucked beneath the head; Original's holds a telephone to the right ear; (d) Left arm—Accused's is held downward and outward from the body, whereas Original's is tucked beneath the head; (e) Right leg—Original's is drawn up in such a manner that the right ankle touches the left knee; Accused's is drawn up beyond the knee and the right ankle touches the left leg at no point; (f) Left leg—Original's is extended in a relatively straight line from the body; Accused's is bent backward and slightly outward at the knee.

The distinguishing elements of Exhibits 10A (Accused) and 27B (Original) are: (a) Hair—Accused's flows down over the back of the neck; Original's is spread out fan-shape around the top of the head; (b) Head—Original's is turned slightly to the left with a small portion of the left cheek showing; Accused's is turned to the right with a portion of the right cheek, eyebrow and eyelash showing: (c) Left arm—Original's hand and lower forearm are completely blocked out by the head and hair; Accused's lower forearm is partially blocked out by the head, but the fingers are visible, resting on the right elbow; (d) Right hand—Original's fingers are spread approximately equidistant from each other; there is a space between the first and second, and the third and fourth fingers of the Accused's hand, but the second and third fingers are joined; (e) Legs—Original's are crossed at the ankles; Accused's are not crossed at any point, but remain in a parallel position; (f) Shoulders—due to the different positions of the arms, there is a slightly different muscular effect in the vicinity of the shoulders and upper back.

The remaining two drawings, i. e., Exhibits 14A (Accused) and 14B (Original), reveal a closer similarity than the foregoing sets, but they do, nevertheless, possess a sufficient number of distinguishing elements. (a) Hair—Accused's hair is red, is parted in the middle and drawn back over the ears, whence it falls in braids;

Original's hair is blonde, apparently unparted and, from its tousled appearance, is designed to produce the effect of "studied carelessness"; (b) Head—Original's is tilted slightly downward and to the left; Accused's is in a perfectly upright position, which causes a distension of the vertical muscles on the left side of the neck, a condition which is not evident in the Original; (c) Face—there is virtually a total variance between both the features and expressions of the two subjects, as can be seen from a comparison of the eyebrows, eyes, mouths and chins; (d) Left arm—Accused's upper arm is extended in an almost horizontal plane from the shoulder, whereas Original's is inclined upward from the shoulder at an angle of approximately 30 degrees; (e) Right hand—only two fingers are inclined directly downward in Original, whereas three fingers are so inclined in Accused with the middle finger hidden by the ring finger; (f) Body position—Original is tilted back somewhat from the hips, whereas Accused is in a more nearly vertical position.

■ In recapitulation, it must be stated that, despite the fact that quite possibly no single item of distinction would, in itself, render a particular painting free of infringement, all of the distinguishing elements, considered in the aggregate, undeniably constitute a new creative work of art. Therefore, the issues must be found for the defendant as to infringement of plaintiff's Exhibits 3B, 28, 27B, and 14B by plaintiff's Exhibits 3A, 8A, 10A and 14A.

■ Proceeding now to the issue of infringement of the trade mark "The Varga Girl", Reg. No. 436,779, I believe that the evidence clearly establishes that defendant has employed the term "Varga Girl" for his own purposes since the time he repudiated his contract with plaintiff. And it is equally clear that, as a matter of law, plaintiff is entitled to the exclusive use of that name by virtue of the provisions of the 1944 contract between the parties. Plaintiff's right to its use was determined in the case of Vargas v. Esquire, Inc., 7 Cir., 164 F.2d 522; and the validity of the contract was determined in the case of Vargas v. Esquire, Inc., 7 Cir., 166 F.2d 651, certiorari denied by Supreme Court on October 11, 1948, 69 S.Ct. 29. Therefore, the issues must be found for the plaintiff as to infringement of trade mark.

■ It might well be however that the question of copyright infringement has been rendered moot by the decisions handed down in the cases cited in the preceding paragraph. It must be realized that the latter decision, which reversed a prior decree of the Court of this District holding the contract invalid, was handed down the day following the termination of the trial of the case at bar. Hence, it was assumed by both parties at the trial that the contract was invalid, and, in consequence thereof, no evidence was submitted as to whether both parties had abrogated the agreement. In the absence of proof that plaintiff had abandoned the contract, all paintings produced by defendant during the term of the contract would become the property of plaintiff by virtue of the following provision: "3. During the term of this agreement Vargas will not create for or furnish to anyone other than Esquire any drawings of any kind or character; and for a period of three (3) years after the expiration or cancellation of this agreement, he will not furnish any drawings created by him to be used by him or anyone else as a part of or in connection with the manufacture or distribution of any products which are in competition with any of the products manufactured, produced, sold, or distributed by Esquire." Quite obviously, therefore, if the agreement remains in full force and effect, it would be improper for this Court to view the art work of defendant as anything but the property of the plaintiff for the duration of the contract period.

The Court, therefore, will entertain a motion, if made within 30 days of the date of this memorandum, to re-open the proofs as to the single issue of the existence of the contract in question. In the absence of such a motion before the termination of that period, a decree will enter in accordance with this memorandum.