**THOMAS WILSON & CO., Inc., Plaintiff,**

v.

**IRVING J. DORFMAN CO., Inc., Defendant.**

**No. 65 Civ. 3514.**

United States District Court
S. D. New York.

May 17, 1967.

Blum, Moscovitz, Friedman, Blum & Kaplan, New York City, for plaintiff; Harold I. Kaplan, Martin J. Beran, New York City, of counsel.

Lackenbach & Siegel, New York City, for defendant; Armand E. Lackenbach, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

On November 18, 1965, plaintiff brought this action for an injunction and damages to remedy defendant's alleged infringement of a copyright in an original lace design. On April 14, 1967, plaintiff noticed the motion for a preliminary injunction, returnable April 25, 1967, which is now before the court. Upon the facts, and for the reasons, outlined below, the motion must be denied.

### I.

The plaintiff, to use its description, "runs an integrated operation," design-

ing, producing and marketing lace goods. The copyright in question, Reg. No. Gp 45930, is for a design entitled "6493." According to the plaintiff, following a common industry practice, lace of this design is exclusively made for and sold to the Warner Brothers Company of Bridgeport, Connecticut, which incorporates the lace into lingerie and other garments. As originally created, the design was for lace produced on a so-called Leavers machine.

Some time in early 1965, plaintiff charges, the head of purchasing for a division of Warner Brothers Company met with one of defendant's officers, showed him the "6493" lace, and asked whether defendant could produce on a Raschel machine a lace which had "the look" of "6493." (The Raschel machine produces "essentially a knitted fabric" at a substantially lower cost than the Leavers, in which "the bobbin or crosswise threads are twisted with and locked around the warp and independent lengthwise threads so as to produce an open mesh textile fabric."[1]) Defendant, alleging reasons for this in conflict with those plaintiff asserts, told Warner Brothers it could deliver the desired sort of Raschel product, and proceeded to do so.[2] Since Warner Brothers, plaintiff says, is the only customer of both parties for the design in question, the result has been a sharp decline in plaintiff's sales to that buyer, measurable precisely by the volume of defendant's sales of the allegedly infringing goods. Moreover, plaintiff asserts, the life of such a lace design is short, and "will have been spent before this action can be reached for trial in the normal course,"[3] so there is need for "immediate injunctive relief * *."[4] Such relief is appropriate, it is argued, because "piracy" is demonstrated conclusively by comparison of the copyrighted with the accused lace.

Defendant's affidavits and memorandum produce substantial controversies on several fronts. Citing a career in the lace business over 45 years old, and producing lace designs they have sold over these years, defendant's officers swear that they were able to give Warner Brothers the desired "look" merely by modest adaptations of their own prior designs. They deny that the copyrighted design has been copied. They swear, moreover, from alleged personal observation, that plaintiff vitiated its copyright by selling substantial quantities of the "6493" design without the required copyright notice.

Apart from the foregoing and other essentially factual areas of dispute,[5] defendant invokes some elementary principles of equity. Pointing to undisputed facts indicating its financial responsibility, defendant stresses that plaintiff waited for almost a year and a half after bringing the suit before presenting its claimed need for "immediate relief by way of preliminary injunction." In these circumstances, with substantial issues to be tried on the merits, defendant urges that damages should be deemed an adequate remedy and that the extraordinary relief so belatedly sought should be denied.

## II.

Omitting, without necessarily rejecting, several issues posed by defendant, the

---

1. Affidavit of Raymond J. Larkin, Jr., plaintiff's Assistant Vice-President, par. 5.

2. Defendant is a "jobber," engaging contractors to produce the goods it sells. Nothing appears to turn on the differences between the economic roles of the parties.

3. Affidavit of Charles Noll, plaintiff's Vice President, par. 4.

4. Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction, p. 2.

5. The court's conclusions on the issues noted, and to be noted, in the text make it unnecessary to enumerate and comment upon other contentions on which defendant proposes to show invalidity of the copyright.

ample reasons for denying a preliminary injunction may be stated as follows:

1. To start from plaintiff's strongest point, there is substantial similarity between the design of its lace and defendant's, but not such clear duplication as to foreclose trial of this issue. In its Memorandum of Law (p. 2) plaintiff says the essential identity between its design and defendant's "will be manifestly evident from an examination of both samples * * *." To nail the point home, the Memorandum later says (p. 15) that "mere inspection and comparison of the respective lace designs in issue by a lay observer compel a finding that the Dorfman lace design is a copy of the Wilson lace design." Then, in what may be only a superficial, but slightly arresting, inconsistency, plaintiff adduces by affidavit the opinions of no less than four experts who swear that the two designs are so alike that one must have been copied from the other.[6] On oaths no less robust, defendant produces flatly contradictory expert opinions.

The court, confident only of its status as plaintiff's "lay observer," is left with the two pieces of lace directly in issue, plus more yardage supplied by defendant from the past designs it says it used to produce the accused product. The two designs at the center of the stage are indeed similar. They are more like each other than either is like defendant's prior designs. But there are plainly noticeable differences, and it would be hard to say certainly that these reflect no more than a studied effort to escape the trap the law sets for the wily as well as the wary infringer. Cf. Scarves by Vera, Inc. v. United Merchants & Mfgrs., Inc., 173 F. Supp. 625, 627 (S.D.N.Y.1959).

The problem for plaintiff is aggravated by the fact that both pieces of lace look to the lay observer like rather commonplace pieces of lace, with seemingly commonplace floral designs. Neither design looks like the markings left by intensely creative activity. The plaintiff reports an earlier copyright of its own for an essentially similar "style." The defendant, upon a full trial, may be able to demonstrate, from the floral designs of others as well as its own, wide usage of such basically comparable patterns. The particular floral arrangement in issue seems to fall within an area—assuming, as the parties do, "even the modest originality that the copyright laws require", H. M. Kolbe Co. v. Armgus Textile Company, 315 F.2d 70, 72, 99 A.L.R.2d 390 (2d Cir. 1963)—where more than "substantial similarity" should be necessary for a finding of infringement. Peter Pan Fabrics, Inc. v. Candy Frocks, Inc., 187 F. Supp. 334, 336 (S.D.N.Y.1960).

The problem, at a minimum, merits exploration with live testimony. If there were no more to the case, the matter could be set for hearing right now and determined for purposes of the preliminary in-

---

6. Cf. Nichols v. Universal Pictures Corporation, 45 F.2d 119, 123 (2d Cir. 1930) (L. Hand, J.), cert. denied, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931):

"Argument is argument whether in the box or at the bar, and its proper place is the last. The testimony of an expert upon such issues, especially his cross-examination, greatly extends the trial and contributes nothing which cannot be better heard after the evidence is all submitted. It ought not to be allowed at all; and while its admission is not a ground for reversal, it cumbers the case and tends to confusion, for the more the court is led into the intricacies of dramatic craftsmanship, the less likely it is to stand upon the firmer, if more naive, ground of its consid-

ered impressions upon its own perusal. We hope that in this class of cases such evidence may in the future be entirely excluded, and the case confined to the actual issues; that is, whether the copyrighted work was original, and whether the defendant copied it, so far as the supposed infringement is identical."

Compare Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946) (Frank, J.):

"If there is evidence of access and similarities exist, then the trier of the facts must determine whether the similarities are sufficient to prove copying. On this issue, analysis ('dissection') is relevant, and the testimony of experts may be received to aid the trier of the facts."

junction application. Or, if it were appropriate to decide the issue without a hearing, decision on the question of essential similarity might well go for the plaintiff. But there is more to the case, enough more to reject what amounts to a grossly tardy claim for a trial preference.

2. There is a sharp issue of fact as to whether plaintiff lost its right to copyright protection by purveying its lace in quantity without the statutory notice required by 17 U.S.C. § 10. Upon oral argument of the motion, attempting to explain the long delay in bringing it, plaintiff's counsel said he needed the deposition of the Warner Brothers purchasing official (taken December 15, 1966) in order to establish that the copyright notice had been duly affixed. This. is at once a poor explanation for the delay [7] and a vivid acknowledgment that the notice problem is substantial. Again, this issue of fact could be tried out now, preliminarily or finally. Again, familiar principles of equity counsel against such a course.[8]

■ 3. In all the circumstances of the case, plaintiff's motion is defeated by its tardiness. There is no adequate explanation for the delay. And the equities at this late hour are all on defendant's side.

■ Plaintiff's argument that the design is short-lived cuts at least equally both ways. To begin with, it accentuates the inordinate time plaintiff took to seek a temporary injunction. It also makes clear that such an injunction would amount in substance to the ultimate relief sought in the action—a further factor weighing against the granting of this extraordinary remedy. See, e. g., Foundry Services, Inc. v. Beneflux Corporation, 206 F.2d 214, 216 (2d Cir. 1953); Blaich v. National Football League, 212 F.Supp. 319, 320 (S.D.N.Y.1962).

As noted already, it is familiar practice in proper cases to try factual issues on preliminary injunction applications.[9] The result, even in an appropriate action, is to give the moving party, or both parties, some measure of preference over those who have been waiting their turn longer. That cannot be justified here. Plaintiff moved at a leisurely pace until it suddenly became inspired with a sense of urgency. It has not even yet filed a note of issue. Its asserted need for "immediate" relief is not impressive.

■ The fact that both parties sell their respective laces to a single customer is also adverse rather than favorable to the plaintiff. Plaintiff's damages, if it proves entitlement to any, will be readily ascertainable. Defendant—to say nothing

7. It might have been supposed—no reason is offered for not supposing—that plaintiff, moving timely for preliminary relief, would have been in a position to show through its own people that the notice requirement had been met. See H. M. Kolbe Co. v. Armgus Textile Company, supra, 315 F.2d at 74.

8. On the disputed facts as they appear from the papers, this is not a case, like Uneeda Doll Co. v. Goldfarb Novelty Co., 373 F.2d 851, 854 (2d Cir. 1967), where defendant has been shown to be a "willful" or "barefaced" infringer claiming an "innocent deviation" from the form of notice of a known copyright. Here, the facts plaintiff has yet to establish include knowledge of the copyright as well as the copying and essential identity it claims. On plaintiff's own version of the case, defendant obtained the "6493" sample from Warner Brothers, and could have proceeded to invest in the Raschel version

without actual or constructive notice of the copyright.

9. Compare the frequent observation that "[w]here sharp issues of fact are presented it is apparent that the case is not a fit one for preliminary relief and the resolution of the disputed issues must await trial." Heyman v. Ar. Winarick, Inc., 166 F.Supp. 880, 883 (S.D.N.Y. 1958), citing cases. Read in context, however, and in the context of common practice, such statements reflect only one, perhaps an important one, of the factors to be weighed in equity. And so here, although the factual issues to be resolved before a preliminary injunction could issue appear substantially to coincide with those to be tried in deciding the case finally, this might not bar plaintiff if its case were otherwise appealing. See Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953).

of Warner Brothers, the most obvious wrongdoer on plaintiff's theory, though it has not been sued—appears able, on the undisputed facts, to pay a judgment. There is, as it is said, an adequate remedy at law.

The motion for a preliminary injunction is denied.

It is so ordered.