## UNIVERSAL ATHLETIC SALES CO., a corporation

v.

## Larry SALKELD et al.

### Appeal of Donald E. PINCHOCK et al.

### No. 74–1456.

United States Court of Appeals, Third Circuit.

Argued Jan. 9, 1975.

Decided Feb. 28, 1975.

Thomas H. Murray, Brown, Murray, Flick & Peckham, Pittsburgh, Pa., Hymen Diamond, Monroeville, Pa., Floyd B. Carothers, Carothers & Carothers Pittsburgh, Pa., Lawrence G. Zurawsky, Pittsburgh, Pa., for appellants.

Robert D. Yeager, Yeager, Stein & Wettach, Pittsburgh, Pa., Lewis M. Dalgarn, Los Angeles, Cal., for appellee; Nilsson, Robbins, Bissell, Dalgarn & Berliner, Los Angeles, Cal., of counsel.

## OPINION OF THE COURT

Before ALDISERT, WEIS and GARTH, Circuit Judges.

WEIS, Circuit Judge.

A chart picturing approved methods to develop physical prowess on a weight-lifting machine leads us to an intellectual exercise in the copyright arena. While weight lifting has the virtue of a rigidly disciplined routine, the copyright law offers, in the main, elusive and nebulous abstractions. And so, while we conclude that the district court erred in finding infringement, we do so without the certainty and satisfaction that accompanies the execution of a perfect "press."

A basic principle, easy to articulate but difficult to apply, is that the expression of an idea may be protected by copyright but the idea itself cannot. The case at bar presents us with the issue whether the defendants' expression of a concept, basic to the use of both its product and the plaintiff's, was so substantially similar as to amount to an infringement.

The individual defendants formed the Super Athletics Corporation in 1971 to manufacture and distribute a multi-station exercise machine designed so that its use brings about the body motions involved in weight lifting. To assist its customers, the defendants prepared a wall chart which utilized sketches, sometimes called "stick figures," to depict certain exercises performed on the machine together with textual material to explain the specific exercises and weight lifting in general.

The plaintiff, Universal Athletic Sales, is a manufacturer of a similar machine, and in 1969 and 1970 it copyrighted an exercise wall chart which it furnished its customers along with a Coaches' Training Manual. Alleging that the defendants had infringed its copyrights, the plaintiff moved for and was granted a preliminary injunction against further circulation of the defendants' chart on April 13, 1972.[1] The order specified that the injunction would issue upon the posting of a $5,000 bond by plaintiff Universal. This condition was not satisfied until April 21, 1972, and in the interim a number of the defendants' charts were distributed to customers and prospective buyers. At least one additional mailing occurred after the bond had been posted. After a hearing, the district court found the defendants in civil contempt for all the acts of distribution after April 13, 1972 and assessed damages and counsel fees.

The plaintiff then moved for summary judgment, relying upon portions of discovery depositions of various of the defendants, parts of the testimony taken during the contempt proceeding, and an analysis of similarities between the two

1. The opinion of the district court is reported at 340 F.Supp. 899 (W.D.Pa.1972). Although the complaint alleged that certain weight-training information on the accused chart had been plagiarized from the original manual, the district judge did not decide the question, and plaintiff did not appeal from the failure to decide it. We, therefore, are not faced with an issue of the wall chart's comprehensive nonliteral similarity to the manual.

charts. After argument, the district court filed an opinion granting summary judgment. This appeal was taken from that judgment as well as from the finding of civil contempt.

■ To establish a copyright infringement, the holder must first prove that the defendant has copied the protected work and, second, that there is a substantial similarity between the two works. The criterion for the latter requirement is whether an ordinary lay observer would detect a substantial similarity between the works. Ideal Toy Corporation v. Fab-Lu Ltd., 360 F.2d 1021 (2d Cir. 1966). Phrased in an alternative fashion, it must be shown that copying went so far as to constitute improper appropriation, the test being the response of the ordinary lay person. Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946). See also Nimmer on Copyright § 143.53 (1973 ed.).

As to the first issue, that of copying, the district court found that, although there was a dispute as to whether the stick figures in the plaintiff's chart were traced by one Hudson, an employee of the defendants, or were merely copied freehand, the distinction (i. e. between copying and tracing) was not material.[2] Having concluded that there was copying, the court found for the plaintiff.

The court made no specific finding, however, that would meet the second test—that of substantial similarity in the sense of an appropriation of the original work. It did, however, refer to the findings made when the preliminary injunction was issued. At that time, the district judge determined that there was "substantial similarity" between the two charts. After applying the test of whether an average lay observer would so find, the court proceeded to analyze in detail various stick figures, comparing the position of arms, legs, etc. This "dissection" of the two works is an approved way of pinpointing similarities in a search to establish the facts of copying and of access to the copyrighted material where such proof is otherwise lacking.

■ But, substantial similarity to show that the original work has been copied is not the same as substantial similarity to prove infringement. As the Arnstein case points out, dissection and expert testimony in the former setting are proper but are irrelevant when the issue turns to unlawful appropriation. While "[r]ose is a rose is a rose is a rose," substantial similarity is not always substantial similarity.

■ We conclude that the entry of summary judgment in favor of the plaintiff must be vacated because the district court did not find that such a quantum of substantial similarity existed as to constitute an infringement. Ordinarily, a remand to the district court would be required. However, based on an observation of the charts which are in the record, we have concluded that there was no infringement. Since no question of credibility is involved in this phase of the case, the Court of Appeals is in as good a position to determine the question as is the district court. Puddu v. Buonamici Statuary, Inc., 450 F.2d 401 (2d Cir. 1971); Concord Fabrics Inc. v. Marcus Brothers Textile Corp., 409 F.2d 1315 (2d Cir. 1969); Millworth Converting Corp. v. Slifka, 276 F.2d 443 (2d Cir. 1960). See Nimmer on Copyright § 140.

A review of copyright infringement decisions confirms the observation that most cases are decided on an ad hoc basis. Judge Hand aptly expressed the state of the law when he said that "[t]he test for infringement of a copyright is of necessity vague," Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960), and that " . . . the line, where-ever [sic] it is drawn, will seem arbitrary . . .," Nichols v. Universal Pictures Corp., 45 F.2d 119, 122 (2d Cir. 1930), cert. denied 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931). It

---

2. Hudson was the artist who prepared the chart under defendant Salkeld's supervision. In his deposition, he stated that the Universal chart was one of his source materials and that he tried to make his work dissimilar to the Universal version.

is necessary, then, that we analyze some of the factors which must enter into a consideration of whether there has been an appropriation, i. e., whether there has been a taking of the independent work of the copyright owner which is entitled to the statutory protection.

From the record in this case, it is obvious that plaintiff's primary concern was not with defendants' use of the stick figures but with the ideas that they conveyed. Thus, its expert on damages testified to the cost of obtaining the medical and physiological bases for the various exercises which were illustrated as well as to the expense incurred in sending experts to the customers to convey the information to them via a live demonstration. Underlying Universal's claim of infringement was a feeling of resentment that the defendants had utilized knowledge which had been secured without their own independent research. In short, it was the protection of the idea that was the foremost consideration of the plaintiff. But, copyright does not protect ideas—only expressions.

■ It is true that originality is not a prerequisite of copyright, and even a modicum of creativity may suffice for a work to be protected. Nevertheless, between the extremes of conceded creativity and independent efforts amounting to no more than the trivial, the test of appropriation necessarily varies. In this context, there is some philosophical parallel with the standards applicable to the grant of copyright in the first instance.[3]

In discussing copyright eligibility, Nimmer writes: "However, it must be recalled that even most commonplace and banal results of independent effort may command copyright protection provided such independent effort is quantitatively more than minimal . . . It appears, then, that there is a reciprocal relationship between creativity and independent effort. The smaller the effort (e. g. two words) the greater must be the degree of creativity in order to claim copyright protection." Nimmer on Copyright § 10.2.

Other factors which should be considered are the nature of the protected material and the setting in which it appears. Nimmer suggests that "[W]ith respect to commercial documents, for example, the similarity probably must be more extensive than in the case of more artistic works in order to justify a finding of substantial similarity." Id. § 143.2 at 631. He follows with a footnote observation that "If the quantum of originality is very modest, it may be that 'more than a "substantial similarity" should be necessary for a finding of infringement,' Thomas Wilson & Co. v. Irving J. Dorfman Co., 268 F.Supp. 711 (S.D.N.Y.1967)." Id. § 143.2 n. 107 (Supp.1974).

In Gaye v. Gillis, 167 F.Supp. 416, 418 (D.Mass.1958), the court said:

"A copyright does not cover an idea or a system of doing business but only the particular mode of expression of the idea embodied in the copyrighted material. The public is free to use the idea or method of doing business and hence, while the copyrighted description of the idea may not be slavishly copied, the copyright is not infringed by an expression of the idea which is substantially similar where such similarity is necessary because the idea or system being described is the same."

Having reviewed the law, we now put it aside while we record our impressions as they would appear to a layman viewing the two charts side by side. In so doing, we concentrate upon the gross features rather than an examination of minutiae.

■ It is difficult to explain all the points of similarity and dissimilarity between the two charts without going into great detail. We give only some of the more obvious ones to indicate the general nature of our reaction to viewing the

---

**3.** We do not overlook the observation in Puddu v. Buonamici Statuary, Inc., 450 F.2d at 402, that "The tests for eligibility for copyright and avoidance of infringement are not the same."

two. Since there are seldom, if ever, cases dealing with the same materials in litigation of this nature, we do not believe that an extended description would be helpful as precedent. We can only paraphrase the language of Judge Hand in Nichols v. Universal Pictures Corp., *supra,* 45 F.2d at 123. The more the court is led into the finer points of the drawings, the less likely it is to stand upon the firmer, if more naive, ground of its considered impressions after its own perusal.[4]

The most obvious differences are in color and arrangement. The accused chart is blue and white, and its horizontal dimensions are greater than its vertical ones. The plaintiff's chart is red and white and is longer vertically than horizontally. The figures in the defendants' chart are simple, are outlined in blue, contain no facial features, and are rugged in appearance. Each sketch showing an exercise position is accompanied by textual material describing the correct procedure. On the other hand, the plaintiff's chart has figures which show some minimal facial features, are outlined in black, and were drawn with more delicate strokes. In only a few instances is there descriptive material beside the figures.

The figures in the accused chart show only one body position per sketch. Plaintiff's chart uses figures with superimposed red lines over the basic position to indicate the changing posture of the body as the exercise proceeds.

Defendants' chart has a rather extensive text at the bottom of the chart dealing with general weight-training information, personal weight-training programs, and Super Gym specifications as well as diagrams of two human figures showing the major muscles. None of this material appears on the plaintiff's chart.

In some of the plaintiff's sketches the exercising figure wears a T-shirt and trunks—in others only trunks. In the defendants' chart the abdominal and chest muscles in the figures are emphasized, and only trunks are worn.[5]

The only real similarities are the use of stick figures in both charts and the corresponding positions of the figures for each exercise. The use of stick figures involves only that minimal amount of creativity discussed earlier, and the position of the stick figures must necessarily be similar because both express the same idea. The plaintiff and defendant machines are so similar in operation that the body positions must be similar.[6] In short, a lay observer could not find such a substantial similarity between the two charts as would amount to an appropriation of the plaintiff's independent work. The ideas are similar, but the expressions are not substantially so.

■ Our finding that there is no infringement requires that the contempt citation also be set aside.[7] The proceeding here was for civil, not criminal, contempt—a distinction which is most important. A defendant may be punished for criminal contempt for failing to obey an injunction which is later set aside, United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884

4. Nimmer points out that "It is entirely immaterial that in many respects plaintiff's and defendant's works are dissimilar if in other respects similarity as to a substantial element of plaintiff's work can be shown . . . Of course, if the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are (within the context of plaintiff's work) of minimal importance either quantitatively or qualitatively, then no infringement results." § 143.2 at 632.

5. For a discussion of infringement of copyrighted drawings in a more "artistic" setting, *see* the opinion of Judge Campbell in Esquire,

Inc. v. Varga Enterprises, Inc., 81 F.Supp. 306 (N.D.Ill.1948), modified 185 F.2d 14 (7th Cir. 1950).

6. Universal also filed a suit for a patent infringement of the training machine itself, but that case is not before us here.

7. The defendants have appealed from the finding of contempt as well as the summary judgment establishing infringement. In view of our disposition of the issues, we need not decide whether the mailings that occurred before the posting of the bond violated the preliminary injunction.

(1947), but the same result does not follow in a civil contempt proceeding.

The difference in treatment is due to the nature of the civil contempt proceeding. It is not designed to vindicate the court's authority but to recompense one of the private parties for loss caused by the failure of the other to observe the court's order. The civil contempt order is strictly remedial. As the Supreme Court said in United States v. United Mine Workers, *supra*, "[T]he right to remedial relief falls with an injunction which events prove was erroneously issued . . . " A vacation of the injunction establishes that there was no basis for any claim for loss based on the invalid court order. *See* Salvage Process Corp. v. Acme Tank Cleaning Process Corp., 86 F.2d 727 (2d Cir. 1936). *See also* Worden v. Searls, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853 (1887). Accordingly, the judgment of the court below as to appellants will be vacated, as are the findings and judgment of contempt. Judgment will be entered in favor of the appellants.[8] Costs to be taxed against appellee.

---

**8.** Since the defendant Salkeld did not appeal, the judgments against him will not be affected by this opinion.