575 F.2d 62
 197 U.S.P.Q. 721, 1978-81 Copr.L.Dec. 25,004,
3 Media L. Rep. 2169
 FRANKLIN MINT CORPORATION, Appellant in 77-1527,
v.
NATIONAL WILDLIFE ART EXCHANGE, INC. and Ralph H. Stewart.
NATIONAL WILDLIFE ART EXCHANGE, INC., Appellant in 77-1526,
v.
The FRANKLIN MINT GALLERY OF AMERICAN ART, INC.
Appeal of NATIONAL WILDLIFE ART EXCHANGE, INC., and Ralph H.
Stewart, in 77-1525.
 Nos. 77-1525 to 77-1527.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 22, 1978.
Decided April 17, 1978.
 
 William C. McCoy, Jr., Bosworth, Sessions & McCoy, Cleveland, Ohio, Theodore J. Martineau, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Nat. Wildlife Art Exchange, Inc., and Ralph H. Stewart.
 Arthur H. Seidel, Roberta L. Jacobs, Seidel, Gonda & Goldhammer, Philadelphia, Pa., for Franklin Mint Corp.; R. E. LaPorte, Franklin Mint Corp., Franklin Center, Pa., of counsel.
 Before ALDISERT, VAN DUSEN and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 Nearly two centuries ago, Lord Mansfield identified the conflicting interests underlying copyright law in his oft quoted warning:
 
 
 2
 "(W)e must take care to guard against two extremes equally prejudicial; the one, that men of ability, who have employed their time for the service of the community, may not be deprived of their just merits, and the reward of their ingenuity and labour; the other, that the world may not be deprived of improvements, nor the progress of the arts be retarded." Cary v. Longman, 102 Eng.Rep. 138, 140 (K.B.1801), quoting Sayre v. Moore (Hil.1785).
 
 
 3
 The necessity of balancing these divergent concepts is illustrated in this case in which we are asked to determine whether an artist infringed a copyright, which he had once owned, by painting another work portraying the same general subject matter. The district court found no infringement and, being in agreement, we affirm.
 
 
 4
 In a series of suits and cross suits, Albert Earl Gilbert and Franklin Mint Corporation were accused of infringing on the purported copyright of National Wildlife Art Exchange, Inc. to a painting, "Cardinals on Apple Blossom." After a bench trial, the district court found that the copyright was valid, but there had been no copying and, consequently, no infringement. Companion cases of defamation, disparagement, and unfair competition were also decided by the district court but have not been pursued on these appeals, which are confined to the infringement claim.
 
 
 5
 In late July or early August, 1972 Ralph H. Stewart began to implement a plan of organizing a business enterprise which would publish and market limited edition prints of wildlife. He telephoned Gilbert, a nationally recognized wildlife artist, and asked him to paint a water color of cardinals. Gilbert agreed and in the following months completed "Cardinals on Apple Blossom," using as source material color slides, photographs, sketches, and two stuffed cardinal specimens. He signed and dated the painting, and placed a copyright notice on it before August 25, 1972, the day when Stewart came to the artist's residence and approved the rendition. While there, Stewart gave Gilbert a check in the amount of $1,500, bearing on the back a notation, "For Cardinal painting 20 X 24 including all rights reproduction etc." On the following day, Stewart and Gilbert discussed a proposal to incorporate National Wildlife Exchange, Inc. to market prints of Gilbert's future works. They agreed in general on the plan but it was understood that at a later date attorneys for both parties would draw up a contract in terms meeting their approval. Gilbert endorsed Stewart's check and cashed it on August 28, 1972.
 
 
 6
 Early in September, 1972, Gilbert delivered the painting to Stewart. That same month, Stewart incorporated National and transferred the painting to it. In connection with his activities for National, an outline of the design of "Cardinals on Apple Blossom" was embossed on his white business cards. No color was applied to the design and no copyright notice was printed on the cards.
 
 
 7
 National placed a representation of the painting in the fall 1972 Newsletter to Members of the Cornell University Laboratory of Ornithology. No copyright notice of National was affixed but Gilbert's was visible. National published a brochure encaptioned "Introducing a First," in December, 1972 which sought orders for prints of "Cardinals on Apple Blossom," and in the next month, it distributed an edition limited to 300 prints of the painting. All bore Gilbert's copyright notice. A year later, National filed for copyright registration of "Cardinals on Apple Blossom" which was subsequently granted.
 
 
 8
 Gilbert and National ultimately were unable to agree upon terms of the business venture discussed in August of 1972, and in January, 1975, Gilbert agreed to paint a series of four water color birdlife pictures, including one of cardinals, for Franklin Mint Corporation. The series was completed in January of 1976, and included a work entitled "The Cardinal." Franklin made engravings of the four paintings which were sold as a group and not separately.
 
 
 9
 In painting "The Cardinal," Gilbert used some of the same source material he had utilized for "Cardinals on Apple Blossom," including preliminary sketches from his collection, photographs, slides, and a working drawing. In addition, however, he used other slides of foliage taken after completion of the earlier painting and sketches specifically developed for "The Cardinal," as well as a series of cardinal photographs. He did not use the stuffed bird specimens which had served as models for "Cardinals on Apple Blossom."
 
 
 10
 After hearing extensive testimony and viewing Gilbert's rendition of a cardinal painted in the courtroom during the trial, the district judge found that the artist had not copied "Cardinals on Apple Blossom" when he painted "The Cardinal." The court also determined that title to the copyright of "Cardinals on Apple Blossom" passed to Stewart when he purchased the painting with the $1,500 check bearing a limited endorsement. In addition, the court ruled that distribution of Stewart's business card did not constitute a publication without notice which would forfeit National's copyright protection. And, since Gilbert's copyright notice appeared on the picture in the Cornell bulletin, the court decided that no forfeiture occurred by such publication.
 
 
 11
 Unlike a patent, a copyright protects originality rather than novelty or invention conferring on the owner the sole right to reproduce the work and to "control all the channels through which . . . work or any fragments of . . . work reach the market." Chafee, Reflections on the Law of Copyright: I, 45 Colum.L.Rev. 501, 505 (1945). It has been said: " Originality in this context 'means little more than a prohibition of actual copying.' " Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99, 103 (2d Cir. 1951) (citations omitted). If there is no copying, there can be no infringement. Mazer v. Stein, 347 U.S. 201, 218, 74 S.Ct. 460, 98 L.Ed. 630 (1954); Universal Athletic Sales Co. v. Salkeld, 511 F.2d 904 (3d Cir.), cert. denied sub nom. Universal Athletic Sales Co. v. Pinchock, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975); Alfred Bell & Co. v. Catalda Fine Arts, supra, at 103 & n.16. Copying done from memory is as objectionable as that done by tracing or direct view, Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738, 741 (9th Cir. 1971); Wihtol v. Wells, 231 F.2d 550 (7th Cir. 1956). Circumstantial evidence of access to the protected work and substantial similarity between it and the alleged infringing work can be used to infer copying when direct evidence is lacking. See Reyher v. Children's Television Workshop, 533 F.2d 87 (2d Cir.), cert. denied, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976); Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946), cert. denied, 330 U.S. 851, 67 S.Ct. 1096, 91 L.Ed. 1294 (1947).
 
 
 12
 To reconcile the competing societal interests inherent in the copyright law, copyright protection has been extended only to the particular expression of an idea and not to the idea itself. See Mazer v. Stein, supra, 347 U.S. at 217-18, 74 S.Ct. 460; Baker v. Selden, 101 U.S. 99, 102-03, 25 L.Ed. 841 (1879). In Dymow v. Bolton, 11 F.2d 690, 691 (2d Cir. 1926), the court observed:
 
 
 13
 "Just as a patent affords protection only to the means of reducing an inventive idea to practice, so the copyright law protects the means of expressing an idea; and it is as near the whole truth as generalization can usually reach that, if the same idea can be expressed in a plurality of totally different manners, a plurality of copyrights may result and no infringement will exist."
 
 
 14
 See also Comment, "Expression" and "Originality" in Copyright Law, 11 Washburn L.J. 440 (1972).
 
 
 15
 Since copyrights do not protect thematic concepts, the fact that the same subject matter may be present in two paintings does not prove copying or infringement. Indeed, an artist is free to consult the same source for another original painting. As Justice Holmes stated: "Others are free to copy the original (subject matter). They are not free to copy the copy." Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 249, 23 S.Ct. 298, 299, 47 L.Ed. 460 (1903).
 
 
 16
 Precision in marking the boundary between the unprotected idea and the protected expression, however, is rarely possible, see Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960); Nichols v. Universal Pictures Corp., 45 F.2d 119, 121 (2d Cir. 1930), cert. denied, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931), and the line between copying and appropriation is often blurred. Troublesome, too, is the fact that the same general principles are applied in claims involving plays, novels, sculpture, maps, directories of information, musical compositions, as well as artistic paintings. Isolating the idea from the expression and determining the extent of copying required for unlawful appropriation necessarily depend to some degree on whether the subject matter is words or symbols written on paper, or paint brushed onto canvas.
 
 
 17
 Moreover, in the world of fine art, the ease with which a copyright may be delineated may depend on the artist's style. A painter like Monet when dwelling upon impressions created by light on the facade of the Rouen Cathedral is apt to create a work which can make infringement attempts difficult. On the other hand, an artist who produces a rendition with photograph-like clarity and accuracy may be hard pressed to prove unlawful copying by another who uses the same subject matter and the same technique.[1] A copyright in that circumstance may be termed "weak," see First American Artificial Flowers, Inc. v. Joseph Markovits, 342 F.Supp. 178, 186 (S.D.N.Y.1972), since the expression and the subject matter converge. Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157 (9th Cir. 1977); Herbert Rosenthal Jewelry Corp. v. Kalpakian, supra. In contrast, in the impressionist's work the lay observer will be able to differentiate more readily between the reality of subject matter and subjective effect of the artist's work. The limitations imposed upon the artist by convention are also factors which must be considered. A scientific drawing of a bird must necessarily be more similar to another of the same nature than it would be to an abstract version of the creature in flight.
 
 
 18
 The "copying" proscribed by copyright law, therefore, means more than tracing the original, line by line. To some extent it includes the appropriation of the artist's thought in creating his own form of expression. In Universal Athletic Sales Co. v. Salkeld, supra at 907, we observed:
 
 
 19
 "To establish a copyright infringement, the holder must first prove that the defendant has copied the protected work and, second, that there is a substantial similarity between the two works. . . . Phrased in an alternative fashion, it must be shown that copying went so far as to constitute improper appropriation, the test being the response of the ordinary lay person."
 
 
 20
 In that case, the district court had found copying but made no specific finding that would meet the second test "that of substantial similarity in the sense of an appropriation of the original work." Copying which had been determined by dissection of the two works at issue was not sufficient, we said, because:"substantial similarity to show that the original work has been copied is not the same as substantial similarity to prove infringement. As the Arnstein case points out, dissection and expert testimony in the former setting are proper but are irrelevant when the issue turns to unlawful appropriation." Id.
 
 
 21
 In the case sub judice, testimony was presented by experts for the respective parties to support and refute substantial similarity. There are indeed obvious similarities. Both versions depict two cardinals in profile, a male and a female perched one above the other on apple tree branches in blossom. But there are also readily apparent dissimilarities in the paintings in color, body attitude, position of the birds and linear effect. In one, the male cardinal is perched on a branch in the upper part of the picture and the female is below. In the other, the positions of the male and female are reversed. In one, the attitude of the male is calm; in the other, he is agitated with his beak open. There is a large yellow butterfly in "Cardinals on Apple Blossom," and none in "The Cardinal." Other variances are found in the plumage of the birds, the foliage, and the general composition of the works. Expert testimony described conventions in ornithological art which tend to limit novelty in depictions of the birds. For example, minute attention to detail of plumage and other physical characteristics is required and the stance of the birds must be anatomically correct.
 
 
 22
 There was also testimony on the tendency of some painters to return to certain basic themes time and time again. Winslow Homer's schoolboys, Monet's facade of Rouen Cathedral, and Bingham's flatboat characters were cited. Franklin Mint relied upon these examples of "variations on a theme" as appropriate examples of the freedom which must be extended to artists to utilize basic subject matter more than once. National vigorously objects to the use of such a concept as being contrary to the theory of copyright. We do not find the phrase objectionable, however, because a "variation" probably is not a copy and if a "theme" is equated with an "idea," it may not be monopolized. We conceive of "variation on a theme," therefore, as another way of saying that an "idea" may not be copyrighted and only its "expression" may be protected.
 
 
 23
 The district court had the opportunity to hear the testimony from the artist and found credible his statement that he did not copy. For further support, Gilbert painted a third picture, "The Cardinal," while in the courtroom and without referring to either of his earlier paintings. The court determined that although some of the same source materials were used in all three paintings, similarity between the works necessarily reflected the common theme or subject and each painting was a separate artistic effort.
 
 
 24
 It is well settled that credibility determinations are uniquely the province of the fact-finder. Government of the Virgin Islands v. Gereau,502 F.2d 914, 921 (3d Cir. 1974), cert. denied, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975). Although evidence of access and similarity between the paintings constitute strong circumstantial evidence of copying, they are not conclusive, Herbert Rosenthal Jewelry Corp. v. Kalpakian, supra, 2 M. Nimmer on Copyright, §§ 139.4 at 605, 141.2 at 613-14 (1976). The trial court's finding of no copying, based as it is on the testimony of the artist and other evidence of creativity, may be overturned only if it is clearly erroneous. Rosen v. Loew's Inc., 162 F.2d 785 (2d Cir. 1947). This situation is different from that in Universal Athletic Sales Co. v. Salkeld,supra, where we passed on the question of similarity between the copyrighted and accused work after copying had been established to determine if there had been appropriation. There, we were in as good a position to make a judgment as the trial court. Here, however, we have not had the opportunity to hear and see the witnesses and, thus, are not in the position to judge credibility as was the district judge. Accordingly, we conclude that the district court did not err in finding that there was no copying.
 
 
 25
 Even if it be assumed that the trial court's finding was based only on an application of a mechanical standard of copying a tracing concept without consideration of the appropriation factor, we would affirm. We have examined the two paintings and based upon our own observations and impressions, we conclude that while the ideas are similar, the expressions are not. A pattern of differences is sufficient to establish a diversity of expression rather than only an echo. Universal Athletic Sales Co. v. Salkeld, supra; Herbert Rosenthal Jewelry Corp. v. Kalpakian, supra at 741-42. The similarities here are of a nature not calculated to discourage an artist in the development of a specialty yet sufficiently distinguishable to protect his creativity in that sphere. Just as Justice Holmes would not ban the ballerinas of Degas, we may not excommunicate the cardinals. See Bleistein v. Donaldson Lithographing Co., supra, 188 U.S. at 251, 23 S.Ct. 298.
 
 
 26
 We conclude that the district judge did not err in finding that there was no copyright infringement. Consequently, we need not decide whether there was a forfeiture of the copyright by publication of the business cards. Similarly, since there was no infringement established, we do not address ourselves to the issue of whether the district court erred in finding that National had acquired Gilbert's copyright.
 
 
 27
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 Compare Esquire, Inc. v. Varga Enterprises, Inc., 81 F.Supp. 306, 307-08 (N.D.Ill.1948), aff'd in relevant part, rev'd in part, 185 F.2d 14, 20 (7th Cir. 1950), with Gross v. Seligman, 212 F. 930 (2d Cir. 1914)