William N. TARASI, an Individual, Plaintiff,

v.

PITTSBURGH NATIONAL BANK, a national banking association, et al., Defendants.

Civ. A. No. 75–196.

United States District Court,
W. D. Pennsylvania.

Sept. 12, 1975.

Anthony J. Bonadio, New Kensington, Pa., for plaintiff.

B. A. Karlowitz, O. R. Sodini, Tucker, Arensberg & Ferguson, Pittsburgh, Pa., for defendants.

OPINION and ORDER

McCUNE, District Judge.

The issue presented for decision here is whether plaintiff's allegation of a "class-based, invidiously discriminatory animus," an element of a 42 U.S.C. § 1985(3) action, see *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) is sufficient to withstand defendants' motions to dismiss under Rule 12(b), Fed.Rules of Civ.Proc. We conclude that it is not.

Plaintiff commenced this § 1985(3) action alleging that defendants, Pittsburgh National Bank (PNB), S. Robert Mialki, and Neal Hageal, maliciously conspired to lure him into debt and to

deprive him of equal protection of the laws. Plaintiff alleges that said conspiracy resulted in malicious prosecution against him as a result of which he was forced to sell certain stocks at a great loss.

The transaction which eventually gave rise to the alleged conspiracy occurred on December 13, 1971, when plaintiff purchased stock in Meridian Industries, Inc. (Meridian) through PNB, on assurances from Mialki, an assistant vice-president at PNB's Verona Branch Office, that a merger between Meridian and Paragon Plastics, Inc. (Paragon) [1] was in the making and that said merger would substantially increase the value of Meridian stock.[2]

On September 5, 1973, some twenty-one months after plaintiff had purchased the Meridian stock, it is alleged that Mialki induced plaintiff to execute a note through PNB in the amount of $15,000.00, primarily for the benefit of defendant Hageal.[3] Plaintiff alleges that he had an understanding with Mialki and Hageal that Hageal would assume the obligation on said note. (Complaint, ¶ 10.)

■■ Plaintiff alleges that due to Hageal's failure to meet his obligations on the note, two checks cashed by plaintiff at the Verona branch of PNB created an overdraft, causing plaintiff to become indebted to PNB. Complaint, ¶¶ 11–12. As a result, PNB, on or about February 11, 1974, filed judgment notes against Tarasi. The complaint continues:

"15. Despite the fact that plaintiff did pay off all debts within thirty days of the aforementioned complaint, defendant, Pittsburgh National Bank, did maliciously pursue civil actions against Plaintiff.

"16. A complaint at 2716 April, 1974, in the Court of Common Pleas of Allegheny County, was filed and summons attempted to be served upon plaintiff by a sheriff, even though plaintiff had not defaulted beyond normal bounds of businessmen [4] leaving doubt as to plaintiff's credit reliability and reputation.

"17. The three defendants named in this complaint did maliciously conspire to lure plaintiff into debt; to then deprive plaintiff of equal protection of the law as guaranteed by the Constitution of the United States, by pursuing the above mentioned civil actions; and to further cause the plaintiff stress and emotional harm."

■■ In plaintiff's brief in opposition to defendants' motions to dismiss he states:

"The defendants' conspiracy was an attempt to destroy plaintiff because of his membership in this class of stock-

1. Defendant Hageal was the president of Paragon Plastics.

2. Plaintiff here is also a plaintiff in Civil Action No. 74–1078 (W.D.Pa.), an action under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10(b)–5 of the Securities Exchange Commission, 17 C.F.R. § 240–10(b)–5, alleging underhanded stock transactions against PNB. Here we are concerned only with the 42 U.S.C. § 1985(3) allegations.

3. The note was allegedly executed by plaintiff as a favor to Mialki and Hageal because of the latter's inability to obtain credit. Complaint, ¶ 9. The note was executed in the name of Tarasi Construction Company.

4. In addition to the reference in ¶ 16 of the Complaint, plaintiff in his brief complains that he was not granted "the courtesy of a grace period as is normal [in] business dealings." It appears from the complaint that plaintiff does not dispute the fact that he was legally indebted to PNB, see Complaint ¶ 13. Nonetheless, he argues that PNB's failure to extend to him a "grace period," thereby forcing him to sell his Meridian stock to pay off the note, constituted denial of equal protection of the law. This is a non sequitur since if PNB had a valid judgment as it apparently did, it was under no obligation or duty to afford plaintiff a "grace period" prior to executing on the judgment. While we assume that the repeated reference to PNB's failure to afford plaintiff a grace period is intended to be indicative of a conspiracy against the plaintiff, the existence of such a conspiracy is immaterial if it did not deny plaintiff a right he would have had but for the conspiracy.

holders. The note which plaintiff was induced to take out in favor of defendant Hageal resulted in the sale of the [Meridian] stock he purchased. The conspiracy shows an intent to 'get the plaintiff out of the picture' by causing him to sell his stock and thus be removed from this class of stockholders."

A complaint may not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Richardson v. Miller*, 446 F.2d 1247 (3rd Cir. 1971). Therefore, accepting the allegations of the complaint as true, we must decide whether the wrong complained of is of federal cognizance. We conclude that it is not.

In the first place, the complaint does not specifically allege acts or conduct by the defendants which infringed upon plaintiff's civil rights. The complaint does not allege specific instances of conspiracy; nor does it allege what motivated defendants or what they stood to gain by "getting plaintiff out of the picture." Furthermore, it does not appear what defendants did to induce plaintiff to execute the note. The complaint itself states that plaintiff executed the note as a "favor" to Mialki and Hageal.

■ As an exception to the notice pleading generally practiced under the Federal Rules of Civil Procedure, civil rights actions must specifically state the acts or conduct of the defendants which violated the plaintiff's civil rights. See *Gozdanovic v. Civil Service Commission*, 361 F.Supp. 504, 507 (W.D.Pa.1973).

However, notwithstanding the lack of specificity, we believe that the record is sufficient to permit an informed ruling on whether the wrong complained of is of federal cognizance. See *Gozdanovic v. Civil Service Commission*, supra. For reasons which follow, we find that the wrong complained of is not within our jurisdiction.

In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) the Supreme Court placed severe limitation on the use of § 1985(3) as a method to obtain federal court jurisdiction:

"It is thus evident that all indicators —test, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies.[5] That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with rights of others. For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe, in the words of Representative Cook, 'that Congress has a right to punish an assault and battery when committed by two or more persons within a State . . .' The constitutional shoals that would be in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." 403 U.S. at 101–102, 91 S.Ct. at 1798.

■ Our understanding of plaintiff's theory is that by purchasing Meridian stock he became a member of a class, to wit, those persons who purchased Merid-

5. Prior to *Griffin*, actions alleging conspiracy under § 1985(3) required some kind of state action. See *Collins v. Hardyman*, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951).

ian shares in reliance of Mialki's assurances of the imminent merger between Meridian and Paragon. Plaintiff maintains that it was in his capacity as a member of that class that he was discriminated against, and not in his individual capacity. Therefore, plaintiff concludes that the "class-based" requirement of *Griffin* is satisfied.[6]

Defendants, on the other hand, contend that the complaint alleges nothing more than a private conspiracy against a private individual.

"The plaintiff is attempting to use § 1985(3) as a basis for Federal Court jurisdiction in a matter that involves nothing more than an alleged tortious interference with plaintiff's business and credit reputation." Def's Br., at 4.

We find plaintiff's argument that he, as a Meridian stockholder, was a member of a class subject to the invidiously discriminatory animus on the part of the defendants fails as a matter of law. Even affording plaintiff the benefit of the trend in recent decisions to accord to the civil rights statutes a sweep as broad as their language, see *Griffin v. Breckenridge, supra*, 403 U.S. at 97, 91 S.Ct. 1790, we find no class-based invidiously discriminatory animus in this factual context.

Plaintiff cites *Westberry v. Gilman Paper Co.*, 507 F.2d 206 (5th Cir. 1975) for the proposition that a mere inference of class-based animus, is sufficient to create a question of fact. In that case, plaintiff claimed defendant had conspired to take his life and have him dismissed from employment because of his anti-pollution efforts directed against the company. The Court of Appeals settled the jurisdictional problem in the following manner:

"In order to prevail at trial [plaintiff] must show that he was a member of a class of environmentalists. . . . There need not necessarily be an organizational structure of adherents, but there must exist an identifiable body with which the particular plaintiff associated himself by some affirmative act."

507 F.2d at 215. Plaintiff attempts to analogize his situation to that of the plaintiff in *Westberry*, arguing that he must show that he was a member of a class of stockholders and that his purchase of Meridian stock was the affirmative act by which he associated himself with the class.

We find the analogy is not well taken. As stated by the Court of Appeals for the Ninth Circuit in *Arnold v. Tiffany*, 487 F.2d 216, 217 (9th Cir. 1973):

"A close reading of *Griffin* leads this court to conclude that the words 'class-based, invidiously discriminatory animus' refer, at most, to that kind of irrational and odious class discrimination akin to racial bias—such as discrimination based on national origin or religion."

Simply stated, it is foreseeable that one who is an "environmentalist" might be discriminated against solely on that basis since one's attitudes toward preservation and use of the environment often excite drastically different views. On the other hand, for this court to conclude that § 1985(3) was intended to embrace the class urged here—those who purchased Meridian stock in anticipation of a merger with Paragon Plastics— would, in our view, amount to treating that section as a general federal tort law. *Cf. Arnold v. Tiffany, supra*. See *Griffin v. Breckenridge, supra*. This we will not do.

Therefore, we conclude that this court lacks jurisdiction over the subject matter of the complaint for failure to allege a viable "class-based, invidiously dis-

---

**6.** Plaintiff has offered to amend the complaint to specifically allege a class-based animus against the plaintiff as a member of the class of stockholders who purchased Meridi- an stock relying on Mialki's representations. In view of our disposition of the motions before us that amendment would serve no useful purpose.

criminatory animus." See *Richardson v. Miller, supra; Waits v. McGowan*, 516 F.2d 203 (3rd Cir. 1975). Therefore, the motions to dismiss by all defendants are granted.[7]

It is so ordered.

---

7. In his brief plaintiff requested the right to file a supplemental brief supporting jurisdiction and cause of action under § 1983. He has not done so and we assume such claim is abandoned.