**UNIVERSAL ATHLETIC SALES CO.**

v.

**AMERICAN GYM, Recreational & Athletic Equipment Corp., Inc., Grayson Industries Corp., American Super Gym Corp., and Super Athletics Corp., Ronald Arbasek, Larry Salkeld, Donald E. Pinchock and S. David Brodsky d/b/a Super Athletics Corp.**

**UNIVERSAL ATHLETIC SALES CO.**

v.

**Larry SALKELD, Donald E. Pinchock, S. David Brodsky, Ind. and d/b/a Super Athletics Corp. and Wes Hudson.**

**SUPER ATHLETICS CORP.**

v.

**OLYMPIA SPORTS PRODUCTS, INC. d/b/a Universal Resilite.**

**SUPER ATHLETICS CORP., a bankrupt, J. M. Evans, Trustee in Bankruptcy,**

v.

**WHITTAKER CORP. and Olympia Sports Products, Inc.**

Civ. A. Nos. 71–166, 71–1113, 72–1107 and 75–565.

United States District Court, W. D. Pennsylvania.

Sept. 27, 1979.

Robert D. Yeager, Pittsburgh, Pa., Lewis M. Dalgarn, Los Angeles, Cal., for Universal Athletics and Olympia Sports Products.

Stephen P. Laffey, Pittsburgh, Pa., for trustee, John Evans, trustee.

Thomas H. Murray, Pittsburgh, Pa., Hymen Diamond, Monroeville, Pa., Lawrence Zurawsky, Floyd B. Carothers, Robert A. Galanter, Pittsburgh, Pa., for Larry Salkeld, Donald E. Pinchock, S. David Brodsky, individuals, d/b/a Super Athletics Corporation; Wes Hudson, an individual; and Super Athletics Corporation.

William C. Walker, Pittsburgh, Pa., for Whittaker Corp.

## OPINION

KNOX, District Judge.

### (A) Procedural History.

This complex piece of litigation involving four separate civil actions for various claims of patent and copyright infringement, unfair competition, misuse of patent rights and violation of the antitrust laws has occupied the time of this court and of the court of appeals of this circuit in various matters for more than eight years. The first action No. 71–166 was filed February 12, 1971 against Larry Salkeld, (Salkeld) et al., d/b/a Super Athletics, American Gym, Recreational and Athletic Equipment Corporation, Inc., (American Gym) Ronald Arbasek (Arbasek) and Grayson Industries, Inc. (the action was instituted by Universal Athletics Sales Co. (Universal)). The suit claimed infringement of Zinkin Patent 2,932,509 for a chest press patent for an exercising machine.

Thereafter, American Super Gym, Super Athletics Corp. (Super Athletics), David Brodsky (David) and Donald E. Pinchock (Pinchock) were added as defendants. There were also claims of unfair competition. A settlement was later entered into between Arbasek and Grayson and these defendants have disappeared from the case. The other defendants filed an answer containing a counterclaim which as amended claims misuse of the patent for violation of the antitrust laws.

The case was so proceeded with that non-jury trial was held before the court on October 29, 30, 31 and December 11 and 12, 1974, and after arguments and briefs the court on June 23, 1975, as amended October 29, 1975, held that letters patent No. 2,932,-509 for a body exercising apparatus issued to Harold Zinkin on April 12, 1960, (397 F.Supp. 1063, W.D.Pa.1975) were invalid as to claims 3 and 4 for obviousness but that if valid, the patent had been infringed. It was further held that defendant Super Athletics was guilty of unfair competition but that Pinchock and Brodsky were not. The counterclaims raising questions of patent misuse and antitrust violations by the plaintiffs were severed and reserved for later determination. The court also on June 23, 1975, determined there was no just reason for delay, a judgment should be entered in accordance with Rule 54(b) and since there were substantial grounds for difference of opinion it was certified that an immediate appeal from this order might materially advance the "ultimate termination of the litigation".

The plaintiff accepted the invitation and filed an immediate appeal to the U.S. Court of Appeals for the Third Circuit which on November 19, 1976, as amended December 30, 1976, determined that the patent was valid, vacated the judgment entered by this court and remanded the cause for further proceedings consistent with this opinion. See *Universal Athletic Sales Company v. American Gym*, etc., 546 F.2d 530 (3d Cir. 1976).

As pointed out in the opinion of June 23, 1975, "The path of this litigation has been filled by detours: a motion to disqualify counsel, a motion for civil contempt and, of

course, lengthy discovery with resistance from both sides. Zinkin's body exercising apparatus has given exercise to lawyers and judges in a manner the inventor would never have imagined." What was true in June 1975 has been reproved several times over in the four years that have elapsed since then. Progress has been delayed by attempted interlocutory appeals and by further discovery and arguments with respect to the same. A lengthy trial on the remaining issues and issues in other cases produced hundreds of exhibits. In view of the complexity of the issues, the filing of briefs which are stacked to a considerable height weighing many pounds and oral argument occupied further time. The matter is now before the court for "final" decision. Regardless of what we do here today, we can see that this case will still be in the courts for a long period of time in the future.

As a result of the holding of the Circuit that the patent was valid and the prior holding of this court that if valid, there had been infringement, there is now presented to this court for decision the questions of (1) damages to be awarded for infringement and (2) damages to be awarded for unfair competition, if any. We also have in 71–166 the issues of patent misuse and violation of the antitrust laws.

The issues in companion actions are also for decision. In 72–1107 against William Farrell and Olympia Sports Products, Inc. claim was made by the defendants in 71–166 that Farrell and Olympia were in violation of the antitrust laws and guilty of unfair competition. The action was dismissed as to Farrell for want of venue and involves the same questions of patent misuse and antitrust violations which appear in the counterclaim in 71–166.

Again on May 8, 1975, Civil Action 75–565 was filed by Super Athletics, David and Stanley Brodsky against Whittaker Corporation and Olympia. Whittaker in its answer also included a counterclaim against David, Stanley and Joseph Brodsky, Brodsky & Co. Inc. and the wives of Stanley and David alleging infringement of the chest press patent and unfair competition. It

appears that during the course of this litigation Universal Athletic Sales has changed from a subsidiary of Whittaker to a division and Whittaker has since divested itself of the whole operation but reserving the causes of action in which it is plaintiff in these cases. J. M. Evans, Trustee in Bankruptcy of Super Athletics was substituted in 75–565 and filed an amended complaint alleging violation of the antitrust laws and conspiracy to put Super Athletics out of business and misuse and abuse of process. Various attorneys have appeared from time to time in these cases and others have disappeared.

These last claims partly arise out of the fourth action before the court for decision, namely 71–1113. 71–1113 was brought by Universal alleging infringement by the defendants of its copyright on wall charts to be used in connection with exercising apparatus. This court held there was infringement (340 F.Supp. 899, W.D.Pa.1972) and assessed damages including a money judgment for civil contempt. The Court of Appeals reversed and held no infringement in 511 F.2d 904 (3d Cir. 1975). No supersedeas was sought and while the appeals were pending Universal executed on the judgment. Super Athletics claims this caused it to go into voluntary bankruptcy. The court had entered an order staying the proceedings upon filing of a supersedeas bond for a sum less than the amount of the claim but defendants elected not to file such bond and instead went into bankruptcy. As a result of the reversal by the Court of Appeals the defendants have filed the claims now pending for conspiracy to ruin their business and for abuse of process and/or malicious use of process. In addition there is an action upon the injunction bond filed by the plaintiffs in 71–1113 for damages suffered by the defendants as the result of the same prior to the reversal by the circuit.

All of these issues will have to be dealt with separately in this opinion.

(B) Damages for Patent Infringement.

(1) Amount of Damages.

In this court's opinion in 397 F.Supp. 1063 at page 1071 (W.D.Pa.1975) this court said:

"In addition, we find that the defendant's chest press apparatus would infringe the Zinkin Patent if the Zinkin Patent were not void as obvious and lacking in novelty. While the question of infringement is, of course, rendered moot by our determination of patent invalidity, we make that finding at this time in the interest of judicial economy for whatever value it may have in the future of this ongoing litigation. We do not, however, by making this finding foreclose the question of patent misuse."

We have reexamined this question, however, at the present time and find no reason to disturb our previous finding in this respect and the case is therefore in the position of the patent being found valid and infringed. We therefore turn at this time to the determination of the amount of damages resulting from the infringement.

At 35 U.S.C. § 284 it is provided:

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

"When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed.

"The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances. July 19, 1952, c. 950, Sec. 1, 66 Stat. 813."

■ This legislation represented a change in the prior law that the patentee or holder of the patent might recover profits made by the defendant. The rule now is that the patent holder gets his own lost profits and if these cannot be established then a reasonable royalty. Whether the patentee can prove his lost profits or not, he is at least entitled to a reasonable royalty. Defendants in this case claim that the chest press patent covered only the device attached to a multistation piece of exercising equipment with many other stations and it cannot be proved exactly what amount of value the infringed patent device contributed to the value of the whole multistation machine. The contention then is that the court should adopt the royalty figures as set forth in certain settlement agreements entered into by plaintiff.

■ Undoubtedly the test is what is the pecuniary loss to the plaintiff *Aro Mfg. Co. v. Convertible Top Co.*, 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). See also *Saginaw Products Corp. v. Eastern Airlines Inc.*, 196 USPQ 129 (E.D.Mich.1977) which holds that the test is the damage to the patentee not the enrichment of the infringer.

■ It has been held that plaintiff has the burden to prove his lost profits and then the burden shifts to the defendant to prove in a case of a component part such as this that the lost profits were attributable to the unpatentable features of the device and thereupon the burden shifts to the plaintiff to show apportionment. If this cannot be shown you then go to a reasonable royalty. See *W. L. Gore Assoc. Inc. v. Carlisle Corp.*, 198 USPQ 359 (D.Del.1978). The court finds that plaintiff had the capability of manufacturing the device that the patent holder and the infringer both sold to the same customers and that plaintiff had sales contacts with the infringer's customers.

It has further been held that you should not consider questions of overhead in determining lost profits. *Vitex Mfg. Corp. v. Caribtex Corp.*, 377 F.2d 795 (3d Cir. 1967). *Buono Sales Inc. v. Chrysler Motors Corp.*, 449 F.2d 715 (3d Cir. 1971).

■ In view of the fact that the chest press device which was patented was attached as one station in a multi-station (5–16 stations) piece of exercising apparatus, plaintiff has gone through elaborate calculations in an endeavor to apportion that portion of the multi-station pieces of apparatus which was attributable to the chest press patented device. We find all of these calculations to be unsatisfactory.

We do find that there is sufficient basis in the evidence from which we can calculate lost profits. It appears that prior to 1974, the plaintiff sold its patented chest press station, Model I C attached to a small frame as a separate item for a price of $595 which cost $221 to manufacture so that the gross profit on the device itself was $255 each. See UAS 237 and 160 of Pltf's Exhibits. While defendant claims that there is no evidence of sale, nevertheless it appears that plaintiff did manufacture this device separately and whether there were sales or not, this is the profit which would have been made. We therefore find we have a definite figure upon which we can calculate the lost profits resulting from the infringement, calculating from the numbers sold. We further find plaintiff's contention that it is entitled to the profits for the entire value of the total mechanism is not sound because we have no evidence of the numbers of persons refusing to buy without the chest press device although the evidence does show it was important to the whole machine. It is noted that the other stations of the multistation device can be used independently and are unpatentable.

We therefore find that the lost sales of the patented device for which plaintiffs are entitled to infringement damages are as follows:

### Sales made by Salkeld

| | | | |
|---|---|---|---|
| Pre-1971 | 400 machines | @255 | $102,000 |
| 1971 | 40 | × $255 | 10,200 |
| 1972 | 90 | × $255 | 22,950 |
| 1973 | 93 | × $255 | 23,715 |
| 1974 (partial year only) | 47 | × $255 | 11,985 |
| Total | | | $170,850 |

Damages to be assessed against Super Athletics are for 1971–1974 only and total $68,650.

We find the royalty basis is therefore not appropriate since we have a definite figure for lost profits and we further find that even if the royalty basis was appropriate, we cannot consider evidence as to amounts paid or agreed upon to settle other litigation. This is not a proper basis for calculating damages consisting of lost reasonable royalties. See Rule 408 Federal Rules of Evidence and *Tights Inc. v. Keyser-Rock Corp.*, 442 F.Supp. 159 (M.D.N.C. 1977); *Faulkner v. Gibbs*, 199 F.2d 635 (9th Cir. 1952). There was no evidence of an established royalty on the part of Universal.

(2) We next turn to the question of trebling the damages. The question here is was the infringement willful? It is true that in the default judgment against Salkeld entered April 22, 1974 where Salkeld entered no defense there was a finding of willful acts of infringement with treble damages to be assessed. We hold that this finding and the default judgment is not binding on the other defendants and that Salkeld's conduct (he knowing of the existence of plaintiffs' patent and the infringement question and not having relied on the advice of counsel) could render him liable for willfulness. See *Jenn-Air Corp. v. Penn Ventilators*, 394 F.Supp. 665 (E.D.Pa.1975).

The court further finds that the other defendants did consult an attorney who advised them. We further note that this court had previously found that the patent was invalid for obviousness and the court of appeals itself indicated some doubt about validity in 546 F.2d 542 and 544. The basic reason for reversal seems to be the weight that this court accorded the testimony of Mr. Lyle in the 1974 trial of this case. We therefore find that there was existence of an honest doubt as to the validity of the patent and this precludes a finding of willfulness. See *Eltra Corp. v. Basic Inc.*, 599 F.2d 745 (6th Cir. 1971). In a routine patent case of doubtful outcome treble damages should not be awarded. See *Malone Crawford Tank Corp. v. Standard Tank Co.*, 511 F.2d 10 (10th Cir. 1975); *Yoder Bros., Inc. v. Calif. Fla. Plant Corp.*, 537 F.2d 1347 (5th Cir. 1976); *Wall v. Carrier Mfg. Co. Inc.*, 511 F.2d 209 (7th Cir. 1975).

### (3) Counsel Fees.

Having held this is not a case for treble damages, by the same token, we find that this is not an exceptional case justifying the award of counsel fees. It is true that questions involving an award of counsel fees are

not necessarily identical with those involving treble damages. See *Purer & Co. v. Aktiebolaget Addo*, 410 F.2d 871 (9th Cir. 1969) but nevertheless finding that this is a routine patent case necessarily implies that there is nothing exceptional about it as is required under 35 U.S.C. § 285.

It is also true that both parties make charges against the other for harassing them in this case. It is claimed that the defendant has unnecessarily insisted on fraud on the Patent Office, that that matter has long been foreclosed and both sides claim obstruction of discovery by the other. The court determines that both sides have been guilty of such obstructionism resulting in unnecessary arguments before the court. It is difficult to sort out the blame on this problem and the court concludes it is a case of the pot calling the kettle black. It is also true that the progress in the case has been further delayed by interlocutory appeals which have prevented further proceedings in this court. We cannot find anything which would make it an exceptional case for an award of counsel fees. The same will therefore be denied.

With respect to Salkeld, it is true that in the default judgment entered against him, it was provided that he and American Gym Corporation should be required to pay to plaintiff their proportionate share of the cost of this action and reasonable attorneys fees. In view of the fact that we do not award any attorneys fees, it does not require any separate award of attorneys fees against Salkeld.

(4) Who is liable in 71–166 for claims of the plaintiff against various defendants including counterclaims asserted by Whittaker in 75–565?

We first note that we are not concerned with the question of piercing the corporate veil or holding the stockholders of Super Athletics as alter egos of the corporation. This claim is disclaimed by the plaintiffs on page 4 of their brief filed in this court. We will therefore take up the defendants in 71–166 seriatim.

(1) Salkeld.

A default judgment was entered against Salkeld on April 22, 1974, wherein it was adjudged "that defendants Larry Salkeld and American Super Gym Corp. shall pay to plaintiff such amounts to be determined at a later accounting for their profits and plaintiffs damages arising out of the infringement of said patent and that three times the amount of damages so determined by the accounting be awarded to plaintiff in accordance with the provisions of 35 U.S.C. § 284 by reason of these defendants' willful acts of infringement." Later evidence indicates that this language in the default judgment was justified, that Salkeld knew of the existence of the Universal Athletic or Zinkin patent and deliberately proceeded to manufacture devices in infringement of the same. Salkeld, however, severed his connections with Super Athletics on April 24, 1972. Salkeld is liable as follows:

| | |
|---|---|
| For pre-1971 sales | $102,000 |
| For 1971 jointly and severally with the other defendants found liable herein | $ 10,200 |
| For 1972 (⅓) | 7,650 |
| Total | $119,850 |

This amount will be trebled so that the total judgment against Salkeld will be $359,550.

(2) American Super Gym and American Gym.

Liability for pre-1971 infringements $102,000. It appears however that plaintiff has not pursued its claim against American Gym and such claim will be dismissed for want of prosecution. As to American Super Gym, in view of the finding of willfulness made in the default judgment order of April 22, 1974, the damages will be trebled so that judgment will be entered against American Super Gym in the amount of $306,000. (No award of counsel fees is made against American Super Gym for the same reason that none is made against Salkeld and none is allowed in favor of the plaintiffs against anyone.)

(3), (4) Arbasek and Grayson Industries.

These defendants have settled with the plaintiff and hence no judgments are entered against them.

**416**

### (5) Super Athletics.

In accordance with the prior discussion in this opinion Super Athletics which joined with Salkeld in the infringement operation in January 1971 is liable to the plaintiffs for the damages assessed for 1971–1974 in the amount of $68,650 for which judgment will be entered.

### (6) S. David Brodsky.

S. David Brodsky is charged as an infringer in 71–166 and also is a counterdefendant in 75–565. The evidence shows that an agreement to establish Super Athletics was executed in January 19, 1971 among Salkeld, Pinchock and S. David Brodsky (David). It was incorporated on March 17, 1971 under the laws of Pennsylvania. It appears that at the time of the incorporation David as well as the family corporation, Brodsky and Company, which he represented in this matter knew of this patent infringement action 71–166 against Salkeld and American Super Gym. David was Secretary-Treasurer of Super Athletics from the beginning of 1971. After Salkeld left on April 24, 1972, David became president. David spent 85%–95% of his time during these years managing Super Athletics. In performing his work, he was serving without compensation as representative of the family corporation Brodsky and Company. He is also a counterdefendant in 75–565.

In 35 U.S.C. § 271(b) and (c) it is provided:

"(b) Whoever *actively induces infringement* of a patent shall be liable as an infringer.

"(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

S. David Brodsky we hold is liable as an inducer of the infringement of this patent and as an aider and abettor as well as the active corporate manager during these years. Officers of corporations engaging in these activities are liable. *White v. Mar-Bel Inc.*, 509 F.2d 287 (5th Cir. 1975). The evidence also shows that David personally participated in the infringement of the patent. An officer of a corporation is individually liable for the torts he personally commits and cannot conceal himself behind the corporation when he is an actual participant in the tort. See *Donsco Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir. 1978). Officers and managers are liable. *Sims v. Mack Trucks Inc.*, 199 USPQ 668 (E.D.Pa.1978), where the court (Lord, C.J.) stated: "The statute provides only that active inducement is necessary for section 271(b) liability and the cases do not shed bright light on what constitutes active inducement. It appears, however, that such inducement requires acts which cause, urge, encourage or aid another to infringe and knowledge by the inducer that infringement is likely." We therefore hold that S. David Brodsky is liable for acts of infringement from January 1971–1974, both inclusive in the amount of $68,650 for which judgment will be entered against him.

### (7) Stanley M. Brodsky.

Stanley is named as a counterdefendant in the counterclaim filed in 75–565. He was treasurer of Super Athletics. The evidence indicated Stanley never actually participated in the management of the corporation but was serving as treasurer in name only. We will therefore hold him not liable and enter judgment in his favor.

### (8) Brodsky & Co. Inc.

Brodsky and Company, the family company, was the dominant factor in the operation of Super Athletics. This corporation which according to the minutes was a shareholder in Super Athletics supplied materials and money to Super Athletics. We do not find that Brodsky and Company was a supplier of a component part for a patent-

ed machine or materials or apparatus specially made or specially adapted for use in the infringement of such a patent. Whatever materials Brodsky and Company furnished appear to be staple articles or commodities. We do find, however, that Brodsky & Co., Inc. was the active, conscious force behind the acts of infringement performed by Super Athletics Company and as such hold it liable under 271(b) as an active inducer of an infringement. Judgment will be entered against it in the amount of $68,650 for acts occurring during 1971–1974.

### (9) The Other Brodsky Family Members, vis: Joseph, Charlotte and Cinda P. Brodsky.

These counterdefendants are named in the counterclaim in 75–565. It is charged that they were the sole owners together with David and Stanley in the corporation Brodsky & Co., Inc. We do not find that these family members were individually involved or participated in the acts of infringement and we do not find any basis for holding them to be liable as aiders, abettors or active inducers. We will, therefore, enter judgment for them on the counterclaim in which they are named in 75–565.

### (10) Donald E. Pinchock.

 Pinchock was an active participant in the formation of Super Athletics Company in January 1971. His Metcom Products Company finished the prototype and began producing the machines sold by Super Athletics. Forty machines were produced. In 1972, he supplied equipment and parts to Salkeld for Super Athletics to continue production. At various points in this litigation he has admitted that he was a participant in the manufacture and sale of gym training machines in competition with plaintiff and continued such participation up to the date of Super Athletics' bankruptcy. As such the court would hold him liable for damages for infringement for the period 1971–1974, both inclusive.

Pinchock earnestly contends that he was not a conscious infringer and had no notice of infringement as required by the patent law. He cites *Union Carbide Corp. v. Graver Tank and Mfg. Co., Inc.*, 127 USPQ 3 (6th Cir. 1960) in support of his position.

35 U.S.C. § 287 provides as follows:

"Patentees, and persons making or selling any patented article for or under them, may give notice to the public that the same is patented, either by fixing thereon the words 'patent' or the abbreviation 'pat.', together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice."

He concedes that where the infringer is cognizant of his infringement, then he may be liable. The record shows that Pinchock was brought upon the record as a party defendant in this case on December 10, 1971, but served December 30, 1971, and hence would be liable at least from this date under the last sentence of 35 U.S.C. 287. It has been held that failure to mark a number on the patented article limits recovery to the period subsequent to notification. *Ellipse Corp. v. Ford Motor Co.*, 461 F.Supp. 1354 (N.D.Ill.1978). We note that the plaintiffs have not seen fit to reply to Pinchock's defense of having received no proper notice as required under 35 U.S.C. § 287. While we find that he is an active inducer and participator in the infringement, we further find that he was not cognizant of the same or legally responsible therefore until December 30, 1971, when he was served with the suit. We will, therefore, enter judgment against him for infringement damages only from and after December 30, 1971, in the amount of $58,650. As to his liability, see *White v. Mar-Bell Inc.*, supra.

· (C) The Misuse of Patent Defense.

The misuse of the Zinkin patent is raised by the defendants as a defense in 71–166 and also as a part of the affirmative claims of Super Athletics, et al. in 72–1107 and 75–565. It is also intermingled with the antitrust defenses in 71–166 and the antitrust claims in 72–1107 and 75–565. At this point, we will deal only with the misuse itself.

 Plaintiff claims that the misuse is not a part of 71–166. It was, however, a part of 72–1107 and the cases were tried together on joint pretrial narratives and pretrial orders. The pretrial order plus the pretrial narrative statements take the place of a complaint and factual pleading under the Federal Rules. See *Basista v. Weir*, 340 F.2d 74 (3d Cir. 1965). See also Rules 15 and 16 F.R.C.P. We, therefore, hold that the defense of patent misuse is properly before us in all cases.

The claims of Super Athletics and its allies seem to be based upon the following elements constituting what they claim as a misuse defense and violation of the antitrust laws of which more hereafter. (1) The filing of a suit in the Central District of California in 1965 entitled *Athletic Sales Co. v. Marcyan*, No. 65–1473. This case was settled in 1966 and the record sealed. (2) An agreement in 1968 whereby Harold Zinkin the inventor covenanted not to compete in connection with the sale of business. (3) The filing of this litigation at 71–166. (4) Settlement in 1972 in 71–166 with Arbasek and Grayson Industries. (5) Execution on a judgment contained in 1974 in case 71–1113 which was later reversed.

(1) This court is not going to determine whether a fraud was committed upon the court at the Central District of California. This would have to be determined by the California court itself. Suffice it to say that Judge Gray of the Central District upon request readily vacated the unsealing order and permitted the parties to examine the terms of the settlement.

(2) While there is speculation by the defendants in 71–166 that the sealing of the record may have concealed something from them until after Super Athletics had committed itself on the design there is no direct showing of this and settlement itself is held inadmissible under Rule 408, except possibly for the purpose of showing an antitrust violation scheme. Salkeld admittedly knew of the Zinkin patent for many years and its infringement.

(3) The Arbasek and Grayson settlement is likewise held inadmissible under Rule 408, this being a settlement involving the claims in this very case.

(4) Bringing suit in 71–166 against Salkeld.

The court finds that this is an illustration of the extent to which the defendants have attempted to take their misuse argument without any basis for the same. To recognize any such rule would prevent any patent holder from suing for injunction and damages to stop infringement.

(5) Not executing against Salkeld. This again is a matter of judgment by an attorney as to whether the expense of issuing an execution is liable to produce anything of value. The court fails to see how this exercise of judgment by counsel can be considered part of patent misuse.

(6) The delay caused by Whittaker in an attempt to disqualify Attorney Murray. This did take time and lengthy hearings and arguments and lengthy consideration by the court before a decision was handed down holding that Murray was not ipso facto disqualified by former representation of Salkeld but the court would be alert to determine if any information derived from Salkeld was being used in this case. The question of disqualification of Murray was a very close one, in view of his prior conferences with Salkeld, a corporate official. The court eventually held that under the circumstances, Murray would not be disqualified since it was not his fault but Salkeld changing allegiance from the defendants to the plaintiff in 71–166 which caused the conflict but that we should be alert to watch for any attempts to use confidential information derived from Salkeld. None such appeared during the trial of the case.

How this can be a part of patent misuse or an antitrust violation, the court is at a loss to understand.

(7) Zinkin covenant not to compete. This was ancillary to the sale of business and nothing unreasonable is shown. It appears valid under California Code 16601. This was two years before Super Athletics started in the business and no showing of impact upon Super Athletics has been made.

(8) The levying of execution in 71–113 on a judgment later reversed will be dealt with hereafter.

■ In summary, the burden is on the defendants and parties asserting misuse of a patent to show the same by convincing evidence. There is no showing that events occurring in California prior to 1971 had any effect whatsoever upon Super Athletics and its infringement violations. Impact must be shown in such case. *Kolene Corp. v. Motor City Metal Treating Inc.*, 440 F.2d (6th Cir. 1971). This case speaks of "misuse in the air" and it appears to the court that this is exactly what the defendants are claiming here. It is not illegal for a person to seek to uphold his monopoly under the patent laws where if he succeeds he only has accomplished what is otherwise legal. Good faith suit to enforce a patent was recognized by our Court of Appeals in *W.L. Gore and Assoc. v. Carlisle Corp.*, 529 F.2d 614 (3d Cir. 1976). This case also stands, of course, for the proposition that "The courts will not aid a patent holder who has abused his patent privilege to recover any emoluments accruing during the period of misuse . . . Where a patent has been used in violation of the antitrust laws, the holder cannot then restrain infringement of the patent by others."

■ The proofs in this case, however, fall short of this. Under 35 U.S.C. § 271(d) it is provided that a patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall not be denied relief or be deemed guilty of misuse for having . . . ." (3) sought to enforce his patent rights against infringement or contributory infringement. To rec-ognize any such rule as that contended for by the defendants would be completely to deprive a patent holder from suing for an injunction or damages to protect himself against infringement. The court holds that nothing has been shown in this case except legitimate use of court process by a patent holder to protect himself and the court therefore determines that no defense on this score has been shown.

The defense of patent misuse was doomed in this case when the Circuit held the patent valid thus rendering inapplicable the many decisions the leader of which is *Walker Process Equipment v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965) the basic U.S. Supreme Court case in this area. If the patent had been held invalid or not infringed, then the defendants might have had a talking point with respect to patent misuse. But this argument failed with the findings of the Court of Appeals in 546 F.2d 530 (3d Cir. 1976).

### (D) Unfair Competition.

■ In the decision of this court in *Universal Athletic Sales v. American Gym*, etc., 397 F.Supp. 1063 (W.D.Pa.1975), it was pointed out that the Lanham Act, 15 U.S.C. § 1125(a) provides a civil remedy by way of damages or injunction against anyone who in connection with goods or services in commerce uses a false description of origin or any false description or representation. See *Parkway Baking Company v. Freihofer*, 250 F.2d 641 (3d Cir. 1958) and *L'Aiglon Apparel v. Lana Lobell, Inc.*, 214 F.2d 649 (3d Cir. 1954). This court further held that most of plaintiff's claims were not actionable under the common law or under the Lanham Act and that mere disparagement of a competitor's product is not actionable under the Lanham Act, since it has been said that every competitor in the market place is expected to sing a little of the tune "Anything Yours Can Do Ours Can Do Better". *Bernard Food Industries, Inc. v. Dietene Co.*, 415 F.2d 1279 (7th Cir. 1969). It was held, however, that misrepresentation of one's own product was actionable and that Super Athletics had been guilty of this form of unfair competition.

As a result, the court stated (397 F.Supp. p. 1073) that judgment would be entered for the plaintiff against the defendant Super Athletics Corporation and in favor of the defendants Pinchock and Brodsky against the plaintiff on the Lanham Act claim, "The appropriate damages to be recovered by plaintiff will be determined at a time to be hereafter fixed." The discussion shows that the main culprit in misrepresenting the defendant's own product was Salkeld who severed his connections with Super Athletics on April 24, 1972, and in the order of default judgment entered against Salkeld and American Super Gym on April 22, 1974, it was stated in paragraph 5 as follows:

> "That defendants Larry Salkeld and American Super Gym Corp. shall pay to plaintiff such amounts to be determined at a later accounting for such damages as plaintiff sustained in consequence of these defendants' acts of unfair competition against plaintiff, and that these defendants shall pay over to plaintiff all gains, profits, and advantages deriving from such unfair competitive acts, as determined by such later accounting."

The question of damages was thus left open for further determination as to all the parties.

We have now received the evidence as to damages suffered by unfair competition.

It is well stated by the defendants in their brief that there was no palming off on the part of the defendants which was proved. It was proved that Super Athletics misrepresented its own products but there is still a need to establish loss. The court has combed its record in vain for any tangible evidence upon which a firm finding of loss and damages as a result thereof can be based. The plaintiffs concede that they have not shown the profits made by the unfair competitors as a result of misrepresentations of their products. While the claim is made that plaintiffs have shown their own lost profits, the court is unable to agree with this. There is no showing that any particular sale was lost as the result of purchaser's reliance upon the misrepresentations by the defendants. We have in the previous order held Pinchock and David Brodsky are not liable for unfair competition but that Super Athletics is. By the same token, the other members of the Brodsky family who are counterdefendants in 75–565 must also be dismissed and the unfair competition claims against Super Athletics, American Super Gym and Salkeld must also be dismissed for lack of proof of damages which are an essential part of such claims. Pennsylvania common law remedies for such unfair competition appear to be the same. *John Wright Inc. v. Casper Corp.*, 419 F.Supp. 292 (E.D.Pa.1976). Whatever damages plaintiffs may have suffered as the result of misconduct of the defendants are compensated for in the claims for infringement which we have previously allowed and we will not allow anything by way of duplication. There was likewise an unfair competition claim against Olympia Sports Products Inc. in 75–565 but as stated at page 96 of defendants' brief, this claim was dropped.

(E) Alleged Antitrust Violations.

Claims that plaintiff Universal Athletic Sales (Whittaker Corporation) was in violation of the antitrust laws in this case causing their opponents in these cases damage or matters which they can use as defenses appear in 71–166 and in the counterclaim in that case in the claims against Olympia in 72–1107 and as the basis for the claim by *Super Athletics, et al. v. Whittaker and Olympia* in 75–565.

Much of what has been said in this opinion relative to the misuse of patent defense is likewise relevant to the antitrust matters and will not be repeated here. The court has held that there is no basis for complaint in (1) misleading the court in California in settlement of the Marcyan case or (2) in concealment by sealing of the record in California. It is held that if there is any basis of a claim for fraud on the court in California it should be brought to the attention of that court. We have further held (3) that the Arbasek and Grayson settlement is inadmissible in this case under Rule 408 and does not show any abuse of patent

privileges. We have also held (4) that the bringing of this suit at 71–166 was a protected activity under the patent act 35 U.S.C. § 271(d), (5) that failure to execute against Salkeld does not indicate anything more than the judgment of an attorney as to whether execution is worthwhile or not and (6) the delays caused by the attempt to disqualify Murray do not indicate abuse of patent. As the result of the way this case developed it required time for the court to decide the question and it was a very close matter for decision. We have further held that (7) the Zinkin covenant not to compete was ancillary to a sale of business and nothing unreasonable about it was shown.

With respect to antitrust violations, we should point out that the real basis for this claim as set forth in the counterclaim in 71–166 was based on an unfounded charge of fraud on the patent office and misuse of a patent known to be void. The foundation underlying this argument has been completely removed by reason of the holding that the patent is valid.

Aside from misuse by attempting to enforce a known invalid patent which claim must fail here, the court does recognize that there are other matters which may give rise to an antitrust violation in connection with the misuse of a patent. It has recently been held by the Court of Appeals for this Circuit that where the patent holder conspires with licensees to establish anti-competitive restrictions to terminate a competing licensee it may be subjected to liability under the antitrust laws. See *Mannington Mills Inc. v. Congoleum Industries, Inc.*, 595 F.2d 1287 (3d Cir. Aug. 1, 1979).

 Super Athletics and the other parties related to it claim that there have been violations of Sherman §§ 1 and 2 shown (15 U.S.C. §§ 1 and 2). The court agrees with Whittaker and Universal that in order to sustain a cause of action under these sections of the Sherman Act, the claimants must prove anti-competitive effects within the relevant product and relevant geographic markets. *Martin B. Glauser Dodge Co. v. Chrysler Corp.*, 570 F.2d 72 (3d Cir. 1977). *American Motor Inns, Inc. v. Holiday Inns Inc.*, 521 F.2d 1230 (3d Cir. 1975). The testimony on behalf of Super Athletics incidentally (see Traistor and Carleo) is that the business of Super Athletics was unaffected. The only problem was making the infringing machines fast enough.

 With respect to alleged violation of Sherman ¶ 2 relative to monopolizing or attempts to monopolize, we again have a woeful lack of testimony to justify any such claim. Again, we have no evidence as to the relevant product market, whether it is in supine chest press machines or in multi-station exercising machines and there has been no effort to establish the relevant geographic market.

Further there has been no showing of the impact of the pre-1971 acts complained of on the defendant. This includes the events in California and the Zinkin covenant not to compete. See *Kolene Corp. v. Motor City Treating, Inc., supra, Rea v. Ford Motor Co.*, 497 F.2d 577 at 589 (3d Cir. 1974).

There is further claim by Super Athletics and its related parties that the evidence shows a conspiracy on the part of Whittaker, Universal Athletic Sales and its allies to ruin and put out of business Super Athletics, a competitor. The only evidence of such conspiracy lies in certain correspondence between Universal Athletics and Olympia. The court has reviewed this correspondence and finds no clear evidence of any intention of destroying Salkeld or Super Athletics. It shows nothing beyond a proper concern by a patent holder and its licensee relative to acts of infringement and unfair competition being committed. This is a legitimate matter for a patent holder to consider and as we have pointed out, it was certainly legitimate for the patent holder to bring suit for infringement and unfair competition. See S.A. 3–S.A. 10. All we read from the correspondence is an urging of the patent holder to take acts against an infringer and an unfair competitor which is certainly a proper concern of a licensee. Aside from this, the only agreement the court can find is that an effective sales program is the best way to beat it. (S.A. 8) Aside from this, it was entirely proper and

we find no lack of good faith in Universal Athletic Sales in bringing this suit. It was under an obligation to do so in order to protect Olympia and certainly a patent holder as pointed out has the right to take steps to protect its patent.

This brings us to the matter upon which Super Athletics and its related parties most strongly rely, viz: the issuing of an execution in 71–1113 in this court when an appeal was pending and the defendants had refused to post bond to stay execution.

71–1113 was an action brought for copyright infringement by Universal Athletics against Salkeld, Pinchock, David Brodsky, Wes Hudson and Super Athletics Corporation. Copyrighted material sought to be protected consisted of certain wall charts put out by Super Athletics Corporation in connection with the sale of its exercising machines. The suit was filed November 24, 1971. The court found that there was copyright infringement and on April 13, 1972, entered a preliminary injunction. On April 21, 1972, as a result of the court order, Whittaker posted a $5,000 injunction bond. On February 28, 1974, the defendants were held in civil contempt of the order of April 13, 1972, and on March 11, 1974, motion for summary judgment was granted to the plaintiffs and further hearing provided for to fix the amount of damages and counsel fees. On April 1, 1974, the defendants filed notices of appeal from the orders of February 28 and March 11, 1974. On April 23, 1974, the $5,000 bond posted by Whittaker on April 21, 1972 was exonerated by order of court. On July 24, 1974, the amount of damages was fixed at the amount of $5900 and counsel fees and expenses at $12,278.05 for which a judgment of $18,178.05 total was authorized and entered. On September 12, 1974, plaintiffs issued a writ of execution upon which a levy was made. On September 19, the defendants filed a motion to stay the writ and on September 24, the court entered an order granting the motion for stay upon filing of a bond with sufficient surety in the amount of $10,000. On October 6, 1974, the court of appeals denied defendants' motion for stay of execution without bond leaving in effect the lower court's order requiring a $10,000 supersedeas bond. On March 10, 1975, the Court of Appeals filed an opinion vacating the judgment of the district court as to findings and judgment of contempt and directing judgment be entered in favor of the appellants, thus reversing the previous orders of this court and holding no copyright violation.

The claims by Super Athletics and its related parties in this area seem to partake both of the antitrust variety and also claims for abuse of process and/or malicious use of process under Pennsylvania law. In the Court of Appeals decision, *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904 (3d Cir. 1975), the court noted in Footnote # 8 "Since the defendant Salkeld did not appeal, the judgments against him will not be affected by this opinion." We therefore find it unnecessary to make any further orders with respect to the liability judgment against Salkeld. The amount has previously been determined to be $18,178.05.

Defendants claim that the result was a premature execution on a judgment against Super Athletics for the purpose of bankrupting the same and driving it out of business. This court holds that there is nothing wrong with executing on an appealed judgment where no supersedeas bond has been filed. As a matter of fact, it might be a matter of malpractice on an attorney's part not to take all legitimate steps to collect a judgment in favor of his client because otherwise the assets subject to execution might disappear or be frittered away in a losing business. The taking of an appeal without a supersedeas or stay bond does not automatically stay an execution. We further note that the stay without any bond at all which was requested by the defendants was likewise refused by the Circuit on October 7, 1974.

Further, we find no damages flowing from the issuance of this execution since the evidence shows that the business was already in a failing state. Ordinarily, a supersedeas bond would be in double or once and a half the amount of the debt or

at least $27,000 but here the court was lenient and provided only for a minimal bond of $10,000. The amount of this bond was not objected to, however, by plaintiff which might have insisted on a much higher bond than $10,000. We find that there is no evidence of malicious intent to put Super Athletics out of business in the course of these procedures.

It further appears that Super Athletics could have posted a bond but deliberately elected not to do so because they thought they were going to lose the case and did not want to lose any more money on the bond. See testimony of David Brodsky R.T. 93–94. It further appears that the company at the time had internal financial problems and this was a further reason for refusing to post an obtainable bond. It also appeared that the machines they were selling were infringing on the patent and they had no right to sell them which would have posed further problems for them if the suit on the patent was lost as it eventually was.

The court finds that there was no obligation on the part of the plaintiff to extend a grace period to the defendant since it was proceeding on a valid judgment. See *Tarasi v. PNB*, 401 F.Supp. 420 (W.D.Pa.1975). Further business difficulties were caused by repayments of loans to David which were made in May 1974, which left Super Athletics in straitened circumstances.

There is some attempt to claim abuse of process or malicious use of process in this case. We find no cause of action under state law on either of these claims. See *Baird v. Aluminum Seal Co.*, 250 F.2d 595 (3d Cir. 1958). The *Baird* case holds in accordance with the decisions of the Supreme Court of Pennsylvania that for abuse of process, there must be lack of probable cause. We find there was none in this case, there being ample probable cause to justify the bringing of this suit and the issuance of the execution. With respect to malicious use of process, plaintiff must show again that defendant has acted without probable cause and again we hold that there was probable cause in filing this suit and issuing the execution. As pointed out above, a

malicious abuse of process action would demand that plaintiffs in addition to other elements prove that the purpose of the issuance of the execution was not to collect a just debt. Under the circumstances, we hold that the purpose here was to collect what at that time appeared to be a just debt in accordance with the findings of this court. The plaintiff would have been entitled to insist upon a larger bond but did not do so and the bankruptcy of Super Athletics was not caused by the issuance of the execution but by a deliberate refusal to post bond in a reduced amount as allowed by the court and also by withdrawals by David rendering its financial condition precarious.

These claims must rise or fall on antitrust violations and we find there were none. The claimants complain that issuing an execution without notice is rude and discourteous. Regardless of this a prudent counsel engaged in issuing an execution such as this would not give notice because this would give defendant an opportunity for concealment or dissipation of assets. We have shown that the threat of bankruptcy which was made in an endeavor to get the execution lifted was a spurious one since a stay bond could have been posted and bankruptcy was caused to a large extent by other financial problems of Super Athletics.

The court has also considered the opinion of the 9th Circuit in *Handguards Inc. v. Ethicon Inc.*, 601 F.2d 986 (9th Cir. May 3, 1979) where the court found there was no evidence of any overall scheme to monopolize and it is the law that a patentee's infringement suit is presumptively in good faith which presumption can be rebutted only by clear and convincing evidence that the injury for which plaintiff seeks to recover is the type that the antitrust laws were intended to prevent. We find none of these elements here and judgment will be entered for defendants and against Super Athletics and its related parties in connection with these claims as well as any claims of abuse of process or malicious use of process.

### (F) Liability on Bond.

As noted the plaintiff in 71–1113 on April 21, 1972, posted a $5,000 bond being security required by the court in connection with the issuance of a preliminary injunction. On April 1, 1974, after a permanent injunction had been granted but before damages and counsel fees had been fixed the defendants except Salkeld filed appeals from the issuance of the preliminary injunction and the entry of a summary judgment on March 11, 1974. (The question of damages and counsel fees was still open.) On April 23, 1974, since a permanent injunction had been issued, it appeared that no further reason existed for maintenance of the bond and the same was exonerated by the court. The court later concluded that it had no jurisdiction to enter the order of exoneration on April 23, 1974, in view of the taking of an appeal whether from an interlocutory order or from a final order.

The bond was required by this court pursuant to Rule 65(c). The court agrees that absent an injunction bond, the court has no power to award damages if it is later determined that an injunction had been improvidently entered. *Russell v. Farley*, 105 U.S. 433, 26 L.Ed. 1060 (1881). The court likewise agrees that in a situation where the bond has been improvidently or erroneously prematurely exonerated there is no basis for suit upon the bond as held by the Ninth Circuit in *Buddy Systems Inc. v. Exer-genie Inc.*, 545 F.2d 1164 (9th Cir. 1976), but here an appeal had been taken which was later held proper by the Court of Appeals for this Circuit in *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904 (3rd Cir. 1975). It is noted at p. 907, the appeal before the circuit was from both the finding of civil contempt for violation of the preliminary injunction and also from the order granting summary judgment. Under these circumstances, the court had no jurisdiction to enter further orders exonerating the bond. The bond should have remained in effect to cover the contingency which did happen, namely that the third circuit held that the preliminary injunction had been improvidently entered and directed that judgment be entered for the defendants on the copyright infringement case. This is not a case such as *Hoffman v. Beer Drivers and Salesmen's, etc. Union*, 536 F.2d 1268 (9th Cir. 1976), cited by the plaintiffs as to the right to issue further orders to maintain the status quo. This order did not maintain the status quo but completely upset it leaving no protection if defendant's argument was correct for the defendants' right to recover damages from the issuance of the injunction if it should be reversed. We therefore hold that the only question now is the amount of damages.

In this suit on the injunction bond under Rule 65.1, defendant claims damages in its pretrial statement as follows: (1) Salaries of employees for preparing wall charts the use of which was enjoined, $400, printing costs $1180, business disruption $2800, a total of $43,080. Plaintiff claims that these claims are inconsistent and contradictory to the other positions taken by the defendants in these cases. Larger damages were claimed at trial. Notwithstanding the pretrial narrative, since the evidence was entered without objection, we will allow the higher amounts of $945 for salary of employees and $1295 for printing.

The court has previously determined each wall chart was worth $100 in the sale of the machines and since it now appears that 30 machines were sold, we will allow $3,000 for this item or a total of $5193.95. Since the total exceeds the amount of the injunction bond in the amount of $5,000, the recovery will be limited to that amount together with interest from the date of reversal, viz: March 10, 1975.

The foregoing opinion contains findings of fact in accordance with Rule 52(a).

An appropriate order based on the above opinion will be entered.